STATE of Alaska, Appellant,

v.

Milton Edward DANKWORTH, Appellee.

No. 7543.

Court of Appeals of Alaska.

Nov. 18, 1983.

Dean J. Guaneli, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Avrum M. Gross and Susan A. Burke, Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

State Senator Milton Dankworth was indicted on two counts of conflict of interest, AS 39.50.090(a).[1] Count II alleged that Dankworth used his official position:

> for the primary purpose of obtaining financial gain for himself by taking action to assure that an appropriation source was enacted during the 1982 session of the Alaska State Legislature from which

---

1. Alaska Statute 39.50.090(a) provides: "No public official may use his official position or office for the primary purpose of obtaining financial gain for himself, or his spouse, child, mother, or father, or business with which he is associated or owns stock."

the Isabel Pass Pipeline Camp could be purchased by the State of Alaska.

Superior Court Judge Walter Carpeneti dismissed count II, holding that Dankworth's alleged acts fell within article II, section 6 of the Alaska Constitution which confers immunity upon state legislators for any statements "made in the exercise of their legislative duties while the legislature is in session." The state appeals this ruling. We affirm.

In August 1981, Dankworth became aware that Alyeska Pipeline Company was trying to dispose of many of its pipeline camps. Dankworth personally participated in negotiations to purchase the Isabel Pass Camp for himself and his business associates. A purchase agreement was signed in December 1981.

Eventually, other members of the legislature became interested in a state purchase of the Isabel Pass Camp for conversion to a correctional facility. However, Charles Campbell, head of the Division of Corrections, was not interested. He found the camp to be unsuitable for a prison and so advised Dankworth. Nevertheless, Dankworth continued to attempt to interest the state in purchasing the property. Subsequently, the Alaska Power Authority became a potential purchaser. Dankworth at that time was the Senate Finance Chairman and was reviewing the governor's capitol budget. He proceeded to take steps to assure that an appropriation for purchase of the Isabel Pass Camp was made in the 1982 governor's proposed budget under the heading "Building Renovation, Replacement, and Surplus Property." No public hearings were held concerning the Isabel Pass Camp.

The first count of the indictment concerned Dankworth's alleged self-dealings in acquiring the Isabel Pass Camp property while promoting its sale to the state at a purchase price which would result in Dankworth receiving substantial profits. Count

II involved Dankworth's use of his influence as a legislator to secure an appropriation for the purchase by the state in the governor's proposed budget.

Article II, section 6 of the Alaska Constitution states in relevant part: "Legislators may not be held to answer before any other tribunal for any statement made in the exercise of their legislative duties while the legislature is in session." The state argues that because legislative independence, the underlying goal of legislative immunity, was not furthered by allowing immunity in this case, Judge Carpeneti erred in dismissing count II.

Article II, section 6 has not been interpreted in Alaska, but its federal counterpart has been discussed by the United States Supreme Court.[2] The state concedes that the federal "speech or debate" clause has been interpreted to require suppression of evidence of "legislative acts" that are sought to be used to prove criminal or civil wrongs. *See United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972); *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). However, the state argues that for an activity to be considered privileged it must take place in public on the floor of the legislature or during formal committee meetings. The state contends that Dankworth secretly tried to secure state funding for the purchase of the pipeline camp, without any public participation. The state asserts that this is "inconsistent with public trust given to legislators."

Dankworth argues that the "speech or debate" clause is "a fundamental aspect of the separation of powers—a safeguard to ensure that legislators in the performance of *official* acts in the legislature may represent their constituents without fear of

**2.** The federal "speech or debate" clause provides in relevant part:

[The Senators and representatives] shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective houses, and in going to and returning from the same; and for any speech or debate in either house, they shall not be questioned in any other place.

U.S.Const. art. 1, § 6.

harrassment in the civil courts or prosecution in the criminal courts." Dankworth further argues that acts other than oral communications and debate are protected, *Kilbourn v. Thompson,* 103 U.S. 168, 204, 26 L.Ed. 377, 391 (1880), if they are even purportedly or apparently legislative. *United States v. Dowdy,* 479 F.2d 213, 226 (4th Cir.1973) *cert. denied,* 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973). Once it is determined that "[a] legislative function . . . was *apparently* being performed, the propriety and the motivation for the action taken, as well as the detail of the acts performed, are immune from judicial inquiry." *Dowdy,* 479 F.2d at 226. It follows from Dankworth's analysis that whether or not the action occurred in public is irrelevant if there is a finding that a legislative function was being furthered.

■ We recognize that the state constitutional provision, while using different language, is essentially the same as its federal counterpart and was intended by the constitutional convention to be so. *See* Alaska Constitutional Convention, Committee Proposal 5, Commentary on the Legislative Article, section 6, at 2 (December 14, 1955). Thus we find persuasive the line of cases interpreting the federal provision and utilize the same analysis in interpreting our own constitution. We hold that our constitutional provision protects any statements made or actions taken[3] by a legislator that directly affect the enactment of legislation or the contents of bills to be submitted to the legislature whether or not the statements or actions occur in public.

■ We thus accept the distinction drawn in the federal cases between the political activities of a legislator which are performed in order to ensure reelection, and the legislative activities of a legislator, which are performed in order to directly influence the enactment of specific legislation. Political activities, which include attempts on behalf of constituents to influence the executive branch in carrying out administrative responsibilities, *i.e.,* prosecuting criminals, are not privileged. Legislative activities as we define them are privileged.

■ Dankworth's actions to assure an appropriation for a state purchase of property were well within his duties as Senate Finance Chairman in overseeing the enactment of legislation establishing a budget. There is no allegation that he took any actions not customarily followed for inserting an item into the governor's proposed budget nor is it suggested that legislators customarily refrain from seeking to influence the governor's proposed budget prior to its submission to the legislature.[4] The state complains that no public input was allowed, but does not show that such input is required or even customary for every proposed appropriation. In summary, the

---

**3.** In *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), a former United States Senator was prosecuted for soliciting a bribe in connection with his vote on pending legislation. The court held that the prosecution was not barred by the privilege. The court carefully pointed out, however, that the crime could be proved by showing the solicitation alone, and did not require proof of any speech given or action taken in obtaining enactment of the legislation which was the subject of the alleged bribe.

**4.** The state recognizes that the enactment of a budget is a legislative function. It argues, however, that working up a proposed budget prior to its submission to the legislature is a function committed to the executive by the constitution. The state contends that Dankworth's efforts to influence the executive branch in the performance of its budgetary responsibilities falls outside of the legislative privilege. It apparently concedes that Dankworth's actions would have been privileged had they taken place after the governor's budget was submitted to the legislature. While we agree that the constitution provides that the executive proposes a budget and the legislature, subject to veto, disposes of that budget, we do not believe that it is helpful to view the budget process as divided into two entirely separate functions. In our view, the executive and legislature have intertwined responsibilities in the enactment of the budget. Thus efforts by a legislator to influence the executive's budget "proposal" would be a legislative function and efforts by the executive to influence the legislature's budget "disposal" would be an executive function. The end product, an adopted budget, would be both a legislative and an executive accomplishment.

state appears to concede that everything Dankworth did constituted normal legislative activity. It argues, however, that because Dankworth's motives were criminal, *i.e.,* self-aggrandizement, his legislative immunity should be deemed forfeited. We disagree. *See United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966).

We recognize the strong public policy behind legislation criminalizing conflicts of interest and self-dealing by legislators. There is an equally strong policy supporting legislative freedom from executive harrassment. The constitutional immunity granted to legislators establishes the proper balance between these competing goals. Examining Dankworth's actions as Senate Finance Chairman in the face of these countervailing public policies, we find that his actions were clearly legislative and therefore within the immunity granted in article II, section 6 of the Alaska Constitution. If the motives for a legislator's legislative activities are suspect, the constitution requires that the remedy be public exposure; if the suspicions are sustained, the sanction is to be administered either at the ballot box or in the legislature itself.

The judgment of the superior court is AFFIRMED.