**Senator Jalmar KERTTULA, Appellant,**

v.

**Mitchell E. ABOOD, Jr., et al., Appellees,**

**and**

**Norman C. Gorsuch, et al., Appellees.**

**No. S–257.**

Supreme Court of Alaska.

July 27, 1984.

---

Jonathan K. Tillinghast, Birch, Horton, Bittner, Pestinger & Anderson, Juneau, and Susan A. Burke, Gross & Burke, Juneau, for appellant.

James T. Robinson and David A. Devine, Smith, Robinson & Gruening, Anchorage, for appellees Mitchell E. Abood, Jr., et al.

James L. Baldwin, Asst. Atty. Gen., Juneau, Norman C. Gorsuch, Atty. Gen., Juneau, for appellees Norman C. Gorsuch, et al.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

This is an appeal from the superior court's denial of Senator Jalmar Kerttula's motion to quash a subpoena which required him to appear and give testimony at a deposition noticed by the plaintiffs in *Abood v. Gorsuch*, 3AN–83–5980 Civil.

We heard the appeal on an expedited basis. Following oral argument we entered a memorandum order which reversed the order of the superior court and directed that the subpoena be quashed and indicated that an opinion would follow. This opinion expresses the reasons for that action.

The plaintiffs in *Abood v. Gorsuch* are certain members of the current majority coalition of the Alaska House of Representatives. The defendants are Attorney General Norman C. Gorsuch and other state officials whose appointments to the positions they hold were confirmed at a joint session of the legislature on June 8, 1983. The plaintiffs challenge the legality of the joint session and thus the validity of the confirmation votes. It is unnecessary to state in detail the legal theories on which the plaintiffs' complaint is based because the question of the merits of the complaint is not before us. The following information is sufficient to set the context of this case.

In late May of 1983 the Speaker of the House of Representatives notified the Governor and Senate President Kerttula that the House was willing to attend a joint confirmation session on June 10, 1983. On June 3, the Governor issued a proclamation scheduling a joint session for June 7.[1] On

---

1. The governor has the authority to convene the two houses of the legislature in joint session pursuant to Alaska Const. art. III, § 17:

 Whenever the governor considers it in the public interest, he may convene the legislature, either house, or the two houses in joint session.

the same day, the House adjourned. On June 6, 1983 the House reconvened, and again adjourned. On June 7, Senator Kerttula called a joint session to order. A majority of the members of the Alaska House were not present at any time on June 7 and the joint session was either adjourned or recessed until the next day. On June 8, Senate President Kerttula again called the joint session to order; a call of the House was then placed and the session was recessed until 2:00 p.m. Upon reconvening, twenty of the forty House members were present. The presence of some had been compelled by the Alaska State Troopers. The session then proceeded to confirm the appointments of the defendants.[2]

Senator Kerttula is not a party in the *Abood v. Gorsuch* litigation. The plaintiffs, however, wished to depose him concerning conversations he had with the Governor pertaining to the Governor's convening of the June 1983 joint session. In particular, the plaintiffs sought to elicit information which would cast light on the Governor's motive in convening the session. Among the plaintiffs' legal theories is a claim that the Governor convened the joint session in an effort to preclude the House from investigating and holding hearings regarding the qualifications of Gorsuch and certain other defendants which "constituted an unwarranted intrusion of the Executive branch into the rights, duties, prerogatives, and powers of the Legislative branch of government...."

## I. APPEALABILITY

▆ We first consider the appropriate method of review of the denial of the motion to quash. Had Senator Kerttula failed to appear at a scheduled deposition and been cited for contempt, the contempt order (to a non-party) would have been appealable as a final judgment. *Surina v. Buckalew*, 629 P.2d 969, 972 (Alaska 1981).[3] However, Senator Kerttula has sought relief before being cited for contempt. In the federal system, orders compelling discovery are generally not final judgments subject to appeal. *Alexander v. United States*, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906); *Socialist Workers Party v. Grubisic*, 604 F.2d 1005, 1007 (7th Cir.1979). The policy behind this rule is efficient judicial administration. Allowing early appeal of discovery orders would lead to "piecemeal" appellate litigation. *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783, 785 (1940); *Borden Co. v. Sylk*, 410 F.2d 843, 845 (3d Cir.1969). We implicitly adopted the federal rule in *Surina* where we held that the proper method of review for a discovery order was an original application for relief pursuant to Appellate Rule 404.[4] 629 P.2d at 972–73.

---

**2.** These votes were taken pursuant to Alaska Const. art. III, §§ 25 and 26 which provide:
*Section 25. Department Heads.* The head of each principal department shall be a single executive unless otherwise provided by law. He shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session, and shall serve at the pleasure of the governor, except as otherwise provided in this article with respect to the secretary of state. The heads of all principal departments shall be citizens of the United States.
*Section 26. Boards and Commissions.* When a board or commission is at the head of a principal department or a regulatory or quasi-judicial agency, its members shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session, and may be removed as provided by law. They shall be citizens of the United States. The board or commission may appoint a principal executive officer when authorized by law, but the appointment shall be subject to the approval of the governor.

**3.** Contempt citations against a party are immediately appealable only if the contempt citation is criminal in nature. The proper avenue of review of civil contempt citations against a party is a petition for review pursuant to Appellate Rules 402 and 403. *Surina*, 629 P.2d at 972 n. 4.

**4.** Appellate Rule 404 provides in part:
(a)(1) An original application for relief may be filed with the appellate court or a judge or justice thereof in any matter within its jurisdiction, whenever relief is not available from any other court and cannot be obtained through the process of appeal, petition for review, or petition for hearing. Grant of the application is not a matter of right but of sound discretion sparingly exercised.

The federal courts have recognized two narrow exceptions which permit the appeal of discovery orders. First, an order is appealable under the "collateral order" exception if it falls "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528, 1536 (1949). Second, the Supreme Court held in *United States v. Nixon*, 418 U.S. 683, 690–92, 94 S.Ct. 3090, 3098–3099, 41 L.Ed.2d 1039, 1054–55 (1974), that President Nixon need not be cited for contempt in order to appeal a discovery order requiring him to produce evidence. The Court reasoned that to require the President to disobey a court order would cause unnecessary constitutional confrontation between two branches of government. *Id.* at 691–92, 94 S.Ct. at 3099, 41 L.Ed.2d at 1054.

 While we appreciate the policies underlying these two federal exceptions and recognize the need for appellate review in special situations that do not constitute a final judgment, we decline to adopt either the "collateral order" or "*Nixon*" exception. As indicated above, review of a discovery order is available in Alaska as an original application for relief. We believe the policy considerations underlying the federal exceptions are adequately met by our discretionary power to grant review under this procedure. *See, e.g.,* 9 J. Moore, Moore's Federal Practice ¶ 110.10, at 136 (2d ed. 1983) (recommending that the "collateral order" exception be revoked if supervisory mandamus, an analogous procedure to that authorized by Alaska Appel-

late Rule 404, is available for the review of new, important, and unsettled questions).

 In conclusion, we elect to treat Senator Kerttula's appeal as an original application for relief.[5] We have granted the application because it concerns interpretation of the legislative immunity clause of the Alaska Constitution, an important issue of first impression before this court. Additionally, as was the case in *Nixon*, forcing Senator Kerttula to defy a court order in order to assert his claim would raise the possibility of confrontation between two branches of the government.

## II. LEGISLATIVE IMMUNITY

Art. II, § 6 of the Alaska Constitution provides in relevant part:

> Legislators may not be held to answer before any other tribunal for any statement made in the exercise of their legislative duties while the legislature is in session.

This single sentence is reflective of an historic tradition of legislative immunity rooted in the struggles between the English parliament and the Tudor and Stuart monarchs. *See United States v. Johnson*, 383 U.S. 169, 178, 86 S.Ct. 749, 754, 15 L.Ed.2d 681, 687 (1966). Some form of legislative immunity is now encompassed in the constitutions of most of our sister states, *Tenney v. Brandhove*, 341 U.S. 367, 375, n. 5, 71 S.Ct. 783, 787 n. 5, 95 L.Ed. 1019, 1026–27 n. 5 (1951), and in the speech or debate clause of the federal Constitution.[6]

The framers of the Alaska Constitution, in developing art. II, § 6, acknowledged the general similarity of the Alaska provision to the federal speech or debate clause, and used the legislative immunity clause of the proposed Hawaiian constitution as a drafting model.[7] The only difference which was

---

5. This court has the discretionary power to treat a matter filed as an appeal as an original application for relief. *See, e.g., Surina*, 629 P.2d at 972 n. 5 (matter filed as petition for review may be treated as appeal); *see also Jordan v. Reed*, 544 P.2d 75, 78–79 (Alaska 1975); *In re E.M.D.*, 490 P.2d 658, 661 (Alaska 1971).

6. United States Const. art. I, § 6 provides: "for any speech or debate in either house, they [senators and representatives] shall not be questioned in any other place."

7. Alaska Const. Convention Comm. Proposal No. 5, Commentary on the Legislative Article II, § 6 at 2 (Dec. 14, 1955); Alaska Const. Convention, Style and Drafting Workfile, Art. II.

specifically identified by the framers between the Alaska and federal Constitutions pertains to the in-session limitation in our document.[8] This limitation is not relevant to this case.

■ Two broad policies underlie legislative immunity. The historical policy is that of protecting disfavored legislators from intimidation by a hostile executive. *Gravel v. United States*, 408 U.S. 606, 617, 92 S.Ct. 2614, 2623, 33 L.Ed.2d 583, 597 (1972). The second policy is the protection of legislators from the burdens of forced participation in private litigation. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324, 336 (1975); *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577, 580 (1967); Comment, *Speech or Debate Clause Immunity for Congressional Hiring Practices: Its Necessity and its Implications*, 28 U.C.L.A. L.Rev. 217, 237–243 (1980). Both policies share a common purpose of furthering legislative effectiveness, while the historical policy is also concerned with legislative independence.

■ Alaska's legislative immunity clause protects legislators from statements made "in the exercise of their *legislative duties* ...." The emphasized words, and their counterpart in federal jurisprudence, "legislative acts," *Gravel*, 408 U.S. at 625, 92 S.Ct. at 2627, 33 L.Ed.2d at 602, have a core meaning which is clear. It necessarily includes activities internal to the legislature such as voting, speaking on the floor of the House or in committee, authoring committee reports, introducing legislation, and questioning witnesses in legislative hearings.

The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Id.* However, the extent to which "legislative duties" reach beyond these core activities is not clear, and the answer probably cannot be gained by reference to any single phrase or formula.

■ Legislative acts, that is those acts subject to legislative immunity, were initially broadly defined by the United States Supreme Court to encompass "things generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 13 Otto 168, 204, 103 U.S. 168, 204, 26 L.Ed. 377, 392 (1880). However, in practice the immunity which has actually been afforded has not been as broad as suggested by this generalization.[9]

Legislative acts in federal law do not include the act of a legislator of informing the public of action taken in the legislature.[10] However, there is state authority to the contrary when the information given to the public is directly related to the legis-

---

**8.** Delegate Stanley McCutcheon made the following comments when offering this amendment:

> The Committee thinking behind this matter is that it was the idea of the Committee that a legislator should be given proper immunity for any of his actions during an active session of the legislature, but that that immunity should not continue to any investigative interim committee where he might utilize that immunity to the detriment of others. That is the reason why the Committee asks unanimous consent for the adoption of this amendment.

4 Proceedings of the Alaska Const. Convention 3100 (Jan. 25, 1956).

**9.** "In no case has this Court ever treated the [speech or debate] Clause as protecting all conduct *relating* to the legislative process." *United States v. Brewster*, 408 U.S. 501, 515, 92 S.Ct. 2531, 2538, 33 L.Ed.2d 507, 519 (1972) (footnote omitted).

**10.** *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979).

lative function.[11] Under federal law a legislator's promise to deliver a speech or to vote in a certain way or to do some other internal legislative act is not itself a legislative act,[12] nor are attempts by legislators to influence the administration of a federal statute by executive officers.[13] However, in *State v. Dankworth*, 672 P.2d 148 (Alaska App.1983), our court of appeals held as privileged a state legislator's attempt to persuade an executive official to include an item in the Governor's proposed budget. The item in question arguably would have led the state to purchase property owned by the legislator. The court of appeals ruled that the preparation of the budget was a joint executive and legislative responsibility and thus federal precedent involving interference with purely executive action was not on point. *Id.* at 151 n. 4.

Where criminal prosecutions are involved, the United States Supreme Court has shown considerable reluctance to extend the scope of protected legislative acts beyond core legislative activity. The court has taken

> a decidedly jaundiced view towards extending the Clause so as to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings.

*Gravel*, 408 U.S. at 620, 92 S.Ct. at 2624, 33 L.Ed.2d at 599. This view, making protection of the speech or debate clause dependent on a determination of whether the legislator's actions were illegal, necessarily is in conflict to some degree with one of the most consistently expressed themes in the legislative immunity cases, that a legislator's motive for a legislative act may not be questioned. *United States v. Johnson*, 383 U.S. at 180, 86 S.Ct. at 755, 15 L.Ed.2d at

688; *United States v. Brewster*, 408 U.S. 501, 509, 92 S.Ct. 2531, 2536, 33 L.Ed.2d 507, 516 (1972). "In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies." *Tenney v. Brandhove*, 341 U.S. at 378, 71 S.Ct. at 789, 95 L.Ed. at 1027–28 (footnote omitted).

The closest analogy for purposes of the present case is presented by those authorities which deal with preparation by a legislator for a legislative act. One such case is *Gravel v. United States*. One of the holdings of *Gravel* is that Senator Gravel's aide, who had the same immunity as the Senator, could not be questioned concerning whom he had contacted and what conversations he had had in preparing for a senate committee hearing, except as relevant to criminal charges. 408 U.S. at 629, 92 S.Ct. at 2629, 33 L.Ed.2d at 605. The Fourth Circuit, in *United States v. Dowdy*, 479 F.2d 213, 224–25 n. 20 (4th Cir.1973), explained *Gravel* as follows:

> Much of our analysis with respect to the indictment and the proof is premised on the holding in *Gravel* that the speech or debate clause bars inquiry into a Congressman's preparation for a subcommittee hearing.... *Gravel* articulated two exceptions to this rule. Inquiry would be permissible: (a) "[if] it proves relevant to investigating possible third party crime," and (b) If the Congressman's act is itself criminal.... Although these exceptions, if read literally, might conceivably be applied in this case, we conclude that the context in *Gravel*—alleged theft and receipt of stolen classified papers—limits their application to cases where the inquiry focuses on the manner and methods of obtaining certain information, and

---

**11.** *See Mehau v. Gannett Pacific Corp.*, 658 P.2d 312 (Hawaii 1983); *Abercrombie v. McClung*, 55 Haw. 595, 525 P.2d 594 (1974); *see also Van Riper v. Tumulty*, 26 N.J.Misc. 37, 56 A.2d 611 (1948); *State v. Nix*, 295 P.2d 286 (Okla.1956).

**12.** *United States v. Helstoski*, 442 U.S. 477, 489–90, 99 S.Ct. 2432, 2439–2440, 61 L.Ed.2d 12, 23–24 (1979).

**13.** *United States v. Johnson*, 383 U.S. 169, 172, 86 S.Ct. 749, 751, 15 L.Ed.2d 681, 684 (1966); *see also Gravel*, 408 U.S. at 625, 92 S.Ct. at 2627, 33 L.Ed.2d at 602.

not to cases where the inquiry focuses on the Congressman's motivations for obtaining certain information. Otherwise, these exceptions would engulf the rule. The court in *Dowdy* held that acts of a congressman in contacting and conversing with officials within the executive branch arguably to gather information for a committee investigatory hearing were shielded by legislative immunity. Similarly, the court in *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530–31 (9th Cir.1983), held that questions as to the source of information which was inserted by a congressman into the Congressional Record were barred by the privilege.

▮ As previously noted, under the Alaska Constitution executive department heads and members of boards and commissions are to be appointed by the governor and confirmed by a majority of the members of the legislature in joint session.[14] The governor has the authority to convene the legislature in joint session.[15] The president of the senate is the presiding officer at joint sessions[16] and as such has the duty to call a joint session to order, once it has been convened by the governor,[17] and to

preside over it. At the joint session, Senator Kerttula thus had a general duty to vote on the Governor's appointees and specific duties to perform as Senate President. His conversations with the Governor may properly be seen as acts in preparation for the performance of these duties.[18] As such they are privileged.[19]

▮ The plaintiffs argue that even if the conversations are privileged,[20] Senator Kerttula, who is not a party in the underlying action, cannot assert privilege. They note that there is a textual difference between the federal speech or debate clause, which states that congressmen "shall not be questioned in any other place," and the Alaska immunity clause, which states that "legislators may not be held to answer before any other tribunal...." The federal speech or debate clause has been held to insulate members of Congress from compulsory testimony in actions in which they are not parties. *Miller v. Transamerican Press, Inc.*, 709 F.2d at 530; *United States v. Peoples Temple of the Disciples of Christ*, 515 F.Supp. 246, 248–49 (D.D.C.1981).[21] We believe that

**14.** *See* note 2, *supra*.

**15.** *See* note 1, *supra*.

**16.** Rule 51, Uniform Rules of the Alaska State Legislature.

**17.** P. Mason, Manual of Legislative Procedure § 575.1(a), at 416 (1979), incorporated by reference as a rule of the legislature by Rule 4, Uniform Rules of the Alaska State Legislature.

**18.** The plaintiffs argue that art. III, § 17 of the Alaska Constitution, which authorizes the Governor to convene a joint session of the legislature, precludes Senator Kerttula from relying on legislative immunity. We disagree. The proper focus of analysis is on the Senator's legitimate legislative duties and whether immunity is justified based on these duties. We conclude that it is.

**19.** There are no criminal charges relating to this case. It is therefore unnecessary for us to decide whether the criminal exception, articulated in *Gravel*, to the rule banning inquiry into preparation for the performance of a legislative act is applicable under the Alaska Constitution.

Plaintiffs suggest that there should also be an exception to the rule of privilege for unconstitutional behavior in preparation for legislative

acts which does not involve criminal conduct. We decline to adopt this suggestion. We are not aware of any case that has so held. Further, the breadth and vagueness of some constitutional doctrines, due process for example, would make the exception nearly always available to a knowledgeable litigant.

**20.** In addition to desiring discovery into the substance of the Senator's conversations, the House Coalition mentioned in a footnote in its brief that it wishes to learn the names of other legislators present when the conversations took place. We conclude that disclosure of the names of persons present at a meeting held to discuss legitimate legislative duties is also entitled to immunity because the disclosure of such information would "reveal information as to a legislative act." *Helstoski*, 442 U.S. at 489, 99 S.Ct. at 2439, 61 L.Ed.2d at 23. *See also Miller v. Transamerica Press, Inc.*, 709 F.2d 524, 530–31 (9th Cir.1983) (congressman cannot be forced to reveal identities of persons providing information on legislative concerns).

**21.** *See also State v. Beno*, 116 Wis.2d 122, 142, 341 N.W.2d 668, 678 (1984) (reaching the same conclusion under the Wisconsin legislative immunity clause).

Alaska's immunity clause should also apply to non-party legislators.

First, there is no indication in the constitutional history accompanying the preparation of Alaska's Constitution that a narrower meaning was intended. Second, the phrase "may not be held to answer" is as broad as the federal language. It conveys a meaning of non-accountability—as, for example, immunity from suit—and a connotation of testimonial immunity regardless of party status. The Supreme Court of the United States has used the analogous phrase "made to answer" in both senses:

> We have no doubt that Senator Gravel may not be made to answer—either in terms of questions or in terms of defending himself from prosecution....

*Gravel,* 408 U.S. at 616, 92 S.Ct. at 2622, 33 L.Ed.2d at 597. Third, one of the purposes of legislative immunity, that of assuring the effectiveness of the legislature, is implicated when legislators are forced to testify concerning their legislative acts, whether or not a legislator is a party to a particular action. Forced testimony can be burdensome and disruptive of legislative business and can serve to deter the performance of legislative acts or the flow of information to a legislator. "The [legislator] might censor his remarks or forego them entirely to protect the privacy of his sources, if he contemplated that he could be forced to reveal their identity in a lawsuit." *Miller v. Transamerican Press, Inc.,* 709 F.2d at 531.

For the above reasons we have concluded that Senator Kerttula may not be compelled to give testimony in *Abood v. Gorsuch.*