Richard ("Dick") SCHULTZ, Plaintiff-Appellant,

v.

Robert SUNDBERG, James ("Jim") Vaden, Lawrence ("Larry") Mix, Jalmar ("Jay") Kerttula, William ("Bill") Sheffield, Norman ("Norm") Gorsuch and Daniel W. ("Dan") Hickey, Defendants-Appellees.

No. 84–3626.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1985.

Decided April 30, 1985.

Paul L. Davis, Edgar Paul Boyko, Boyko, Davis & Dennis, Anchorage, Alaska, for plaintiff-appellant.

Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., George N. Hayes, Robert L. Eastaugh, Marc D. Bond, Anchorage, Alaska, Birch, Horton, Bittner, Pestinger & Anderson, Jonathan K. Tillinghast, Susan A. Burk, Gross & Burke, Juneau, Alaska, for defendants-appellees.

Before FARRIS, ALARCON, and FERGUSON, Circuit Judges.

PER CURIAM:

Schultz, an Alaska state representative, was compelled to attend a joint session of the state legislature by the Alaska State Troopers named as defendants in this suit. Schultz' attendance was ordered by defendant Kerttula, the president of the state senate, for the purpose of achieving a quorum so that the Governor's appointees could be considered. Subsequently, Schultz brought suit under 42 U.S.C. §§ 1983, 1985(3) for violation of his civil rights and for common law torts of assault and battery, false imprisonment, and false arrest.

The suit was dismissed by the district court, von der Heydt, J., on summary judgment because it found that the defendants were immune from suit and that the § 1985(3) suit could not be maintained by a plaintiff who was not the victim of invidious discrimination. The pendent state

claims were also dismissed. Schultz appealed. We affirm.

FACTS

On February 15, 1983, Governor Sheffield submitted most of his appointees to the legislature. The appointments required confirmation by the Alaska legislature sitting in joint session. The House Judiciary Committee began investigating Gorsuch, the nominee for attorney general and a defendant in this suit, for irregularities in a Sheffield fundraising trip.

The subject of Gorsuch's nomination mushroomed into a political controversy. The Governor refused to release documents requested by the Committee, and subsequently appointed a special prosecutor. Unable to resolve the matter, the Alaska House of Representatives adjourned on June 1, 1983.

On June 3, Governor Sheffield called a joint session of the legislature to commence at 2:00 p.m. on June 7. The power to convene the legislature is conferred on the governor by Alaska Constitution, Art. III, § 17. When the joint session was convened on June 7, Senate President Kerttula, as presiding officer of the joint session under Alaska Legislature Uniform Rule 51, noted the absence of a quorum. Later that evening, the joint session was adjourned until 10:00 a.m. on June 8.

During the evening of the 7th and the early morning of the 8th, Gorsuch, Sundberg, the commissioner of public safety, and several state troopers met to discuss how the attendance of the recalcitrant representatives could be compelled. Gorsuch believed that the governor had the inherent authority to compel attendance. Schultz' lawyer had warned Sundberg that if the governor compelled Schultz' attendance, he would sue for civil rights violations. Vaden, one of the state troopers, believed that only Kerttula, as presiding officer over the joint session, could compel attendance under Uniform Rule 16(e).

Governor Sheffield requested that Kerttula order the absent representatives' attendance; Kerttula complied. The senate sergeant-at-arms and several troopers then proceeded to Schultz' office where they informed him of Kerttula's order and, after a minimal show of force, escorted him to the Senate chambers. The joint session was called to order and the presence of a quorum was noted. Schultz formally protested the proceedings. The governor's appointments were voted on and the session was adjourned.

Schultz brought suit against Kerttula and department of public safety officials Vaden, Mix, and Sundberg. All of the defendants filed motions to dismiss or, in the alternative, for summary judgment. On August 16, 1983, Schultz amended his complaint to name Governor Sheffield, Gorsuch, and state prosecutor Hickey. All of the defendants filed new motions to dismiss and for summary judgment. The defendants asserted, as grounds for their motions, that they were immune from suit, that the suit was barred by the tenth and eleventh amendments, that the federal courts should abstain from hearing the case, and that the § 1985(3) claim could not be maintained because Schultz was not the victim of invidious discrimination. After hearing oral arguments, the district court granted the defendants' motions. The court also dismissed the pendent state claims for lack of jurisdiction.

DISCUSSION

■ The standard of review for an appeal from summary judgment is *de novo*. *Chelson v. Oregonian Publishing Co.*, 715 F.2d 1368, 1370 (9th Cir.1983). To affirm, we must determine that there are no disputed issues of material fact and that, viewing the evidence in the light most favorable to Schultz, the defendants should prevail as a matter of law. *See Fruehauf Corp. v. Royal Exchange Assurance of America, Inc.*, 704 F.2d 1168, 1171 (9th Cir.1983).

*Senate President Kerttula was entitled to absolute legislative immunity*

■ The Alaska Court of Appeals has indicated that the free speech and debate clause of the Alaska Constitution is essen-

tially identical to its federal counterpart. *State v. Dankworth,* 672 P.2d 148, 151 (Alaska Ct.App.1983). Cases interpreting the federal provision are, therefore, persuasive authority on the Alaska provision. *Id.* Once it is determined that legislators are acting within the "legitimate legislative sphere," the clause is an absolute bar. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975). The immunity provided by the clause thus applies " 'to things generally done in a session of the House by one of its members in relation to the business before it.' " *Hutchinson v. Proxmire,* 443 U.S. 111, 126, 99 S.Ct. 2675, 2684, 61 L.Ed.2d 411 (1979) (quoting *Kilbourn v. Thompson,* 13 Otto 168, 204, 103 U.S. 168, 204, 26 L.Ed. 377 (1881) ). The shield thus extends to those actions necessary to preserve the legislative process but not beyond them. *Id.,* 443 U.S., at 127, 99 S.Ct. at 2684 (quoting *United States v. Brewster,* 408 U.S. 501, 517, 92 S.Ct. 2531, 2540, 33 L.Ed.2d 507 (1972) ).

■ We utilize a two-part test to determine whether an activity is within the "legitimate legislative sphere." The activity must (1) be "an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings," and (2) "address proposed legislation or some other subject within [the legislature's] constitutional jurisdiction." *Miller v. Transamerican Press, Inc.,* 709 F.2d 524, 529 (9th Cir.1983). Kerttula was absolutely immune because his

action took place on the floor of the Senate in an effort to convene a joint session. The business before the Legislature, a confirmation vote on the Governor's proposed appointees, was clearly legislative in nature. Moreover, an act to compel the attendance of other legislators at a legislative session is an integral legislative function. *Cf. Eastland,* 421 U.S. at 505 [95 S.Ct. at 1822], ... *Keefe v. Roberts,* 116 N.H. 195, 199, 355 A.2d 824, 827 (1976) (acts of securing quorum

by compelled attendance is part of legislative process).

577 F.Supp. 1491, 1495 (D. Alaska 1984).

■ Schultz suggests that Kerttula should not be immune because he was acting in furtherance of a conspiracy with executive officials. This assertion is immaterial. Since the act was within the legitimate legislative sphere, motives for the act may not be examined. *See Eastland,* 421 U.S. at 508, 95 S.Ct. at 1824.

■ Finally, Schultz asserts that Kerttula did not have authority to issue the order and legislative immunity should not adhere. This argument is premised on Schultz' interpretation of Uniform Rule 51, which provides that the "president of the senate in the presence of the speaker of the house presides over joint sessions." According to Schultz, Kerttula could only preside over a joint session with the speaker of the house. Uniform Rule 16(e) provides that the presiding officer may compel the attendance of absent members. Because the speaker was not at the June 8 joint session, Kerttula did not have authority to issue the Rule 16(e) order.

We understand but reject the argument. The Alaska Supreme Court has interpreted Uniform Rule 51 as providing that the senate president alone is the presiding officer at joint sessions. *Kerttula v. Abood,* 686 P.2d 1197, 1204 (Alaska 1984). This interpretation of state law by the Alaska Supreme Court indicates that Kerrtula had the authority to compel the attendance of absent legislators at the joint session.

*The executive officials are entitled to qualified immunity*

■ Recently, in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court replaced the subjective good faith test for qualified immunity of government officials with an objective standard. Under the *Harlow* test, government officials are shielded from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738

(citations omitted). This change was motivated by a desire to allow for more expeditious dispositions of suits against government officials on summary judgment. *Id.* at 817–19, 102 S.Ct. at 2738–39. Although *Harlow* concerned federal government officials, the Court made clear that the same standard applied in suits against state officials under 42 U.S.C. § 1983. *Id.* at 818 n. 30, 102 S.Ct. at 2738 n. 30.

In the present case, Kerttula's authority to issue the Rule 16(e) order may have been uncertain at the time of the events in question. This would, however, militate toward qualified immunity for the defendants as they could not "fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* at 818, 102 S.Ct. at 2738. Moreover, the Alaska Supreme Court subsequently indicated that Kerttula did have authority to issue the order as the presiding officer over the joint session. *See Kerttula,* 686 P.2d at 1204. In light of this, it would be impossible to say that the defendants' actions in requesting and implementing the Rule 16(e) order violated clearly established rights. The defendants have a qualified immunity for their actions.

*Schultz' § 1985(3) and pendent state law claims were properly dismissed*

■ Schultz alleges that he is the member of a class of Alaska state representatives that was conspired against by a group of state senators and executive officials. In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court indicated that 42 U.S.C. § 1985(3) might apply to conspiracies motivated by a "class-based, invidiously discriminatory animus" other than racial discrimination. *Id.* at 102, 91 S.Ct. at 1798. Applying this construction of section 1985(3), we have extended it beyond race only when the class in question can show that there has been a governmental determination that its members "require and warrant special federal assistance in protecting their civil rights." *DeSantis v. Pacific Telephone & Telegraph Co.,* 608 F.2d 327, 333 (9th Cir.1979); *accord Canlis v.*

*San Joaquin Sheriff's Posse Comitatus,* 641 F.2d 711, 720 (9th Cir.1981). More specifically, we require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection. *DeSantis,* 608 F.2d at 333.

The class that Schultz is a member of is a transitory coalition of state representatives. The coalition sought to prevent consideration of Governor Sheffield's appointees by remaining absent from the joint session called for that purpose. Because there has not been any governmental determination that such a class merits special protection, the plaintiff's section 1985(3) claim cannot be maintained. Our holding is bolstered by *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). In that case, the Supreme Court held that section 1985(3) does not reach conspiracies motivated by economic or commercial, but non-racial animus. *Id.* at 3360. The Court also indicated that section 1985(3) probably did not extend to wholly political, non-racial conspiracies. *Id.* at 3359–60. We conclude that Schultz's section 1985(3) claim was properly dismissed.

■ When federal claims are dismissed before trial, the question whether pendent state claims should still be entertained is within the sound discretion of the district court. *Arizona v. Cook Paint & Varnish Co.,* 541 F.2d 226, 227 (9th Cir. 1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977). Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed. *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 651 (9th Cir.1984). Because Schultz' federal claims were dismissed on summary judgment, the district court did not abuse its discretion in dismissing his pendent state claims.

AFFIRMED.