Ronald **WHALEN** and Carol Whalen, Appellants,

v.

Co–Chair Mark **HANLEY** and Co–Chair Richard Foster of the State of Alaska House Finance Committee, and Representative Terry Martin, Appellees.

No. S–9824.

Supreme Court of Alaska.

Jan. 31, 2003.

Ronald E. Whalen, pro se, and Lawrence Curt Delay, Friday Harbor, Washington, for Appellants.

Susan D. Cox, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellees Mark Hanley and Richard Foster.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Legislative immunity protects legislators with respect to "any statement made in the exercise of [their] legislative duties."[1] A state employee sued legislators for defamation. He claimed that they attached defamatory information to minutes of a legislative finance committee meeting in which legislators discussed state claims to recover from him and other state employees payments they were allegedly ineligible to receive. Because the legislators' duties clearly included conducting the meeting, discussing the payments, and issuing meeting minutes, we affirm the superior court's dismissal of the lawsuit.

## II. FACTS AND PROCEEDINGS

Ronald Whalen was an employee of the State of Alaska's Marine Highway System. He and other Alaska Marine Highway System employees became the subjects of an investigation into their eligibility to receive cost-of-living-differential (COLD) payments. In June 1995 Mark Boyer, Commissioner of the Alaska Department of Administration, sent an interoffice memorandum to Jim Ay-

---

1. Alaska Const. art. II, § 6; AS 24.40.010.

ers, chief of staff to Governor Tony Knowles, discussing claims against Whalen and other employees and possible settlement of those claims. The state entered into an agreement with the workers in August 1995. As part of the agreement, all actions the state had taken against Whalen were "vacated and dismissed with prejudice." [2]

On March 20, 1996 Representatives Mark Hanley and Richard Foster, the co-chairs of the House Finance Committee, conducted a meeting of that committee; also attending were eight other legislators, Commissioner Boyer, and other members of the executive branch. During the meeting the legislators discussed receipt of COLD payments by the Marine Highway System employees who were allegedly ineligible to receive COLD payments at the higher rate paid to residents, and discussed the settlement of the state's recovery claims. Ronald Whalen and his wife Carol allege that Commissioner Boyer's June 1995 memorandum was attached to the minutes of this meeting, and that the whole document was disseminated to the public. On March 21, 1996 the Anchorage Daily News published a story about the COLD payments and the settlement. The story identified Ronald Whalen and other Alaska Marine Highway System employees by name.

Ronald Whalen made several public information requests for documents and tapes relating to the March 1996 committee meeting. He contacted Kathy Holmquist, then Senate Finance Committee secretary, to request a copy of the committee meeting minutes and the June 1995 Boyer memorandum.

Although Holmquist's response to Whalen included the Boyer memorandum, the parties dispute whether the Boyer memorandum was also included in the materials disseminated to the public after the March 1996 meeting. Holmquist explained in an August 1996 letter that "only an excerpt (paperclipped in the packet) with no accompanying attachment was before House Finance members when [the] March 20, 1996, discussion occurred."

The Whalens filed a superior court defamation complaint in February 1998.[3] Their amended complaint asserted defamation claims against the State of Alaska; Representatives Mark Hanley, Richard Foster, and Terry Martin; Senators Rick Halford and Steve Frank; state employee Kathy Holmquist; and twenty unnamed state employees. The amended complaint alleged that the state defendants had defamed Ronald Whalen and that Carol Whalen had also suffered damages. The state defendants filed motions for dismissal under Alaska Civil Rule 12(b) and for summary judgment under Alaska Civil Rule 56. The superior court granted the motion to dismiss the claims against Senators Halford and Frank and Ms. Holmquist.[4] The superior court dismissed by summary judgment the claims against the remaining defendants in May and July 2000. The superior court issued its final judgment in July 2000.

■ The Whalens appeal the summary judgments granted to Representatives Hanley, Foster, and Martin.[5] They do not appeal the dismissal of the claims against Senators Halford and Frank and Ms. Holmquist. The

---

**2.** The agreement provided in part:

> The actions taken against ... Ronald E. Whalen regarding COLD eligibility will be vacated and dismissed with prejudice. However, [he] must re-certify and be found eligible for COLD [according to state residence requirements] in order to again receive COLD payments.... Mr. Whalen release[s] the State from any and all claims or liability relating to COLD up to the date of the execution of this agreement.

**3.** The Whalens were joined in the original complaint by two other employees and their wives. These four plaintiffs have not appealed.

**4.** The superior court converted the motion to dismiss into a motion for summary judgment,

which the court granted in favor of Ms. Holmquist and Senators Halford and Frank.

**5.** The superior court dismissed the Whalens' claims against Representative Martin on the additional ground that "[t]here has been no notice of appearance and no proof of service on him." The Whalens argue in their reply brief that the superior court erred in dismissing for this reason because "it should have in all fairness given the plaintiffs prior notice and opportunity to address the issue." This assertion is not sufficient to preserve a claim of error. The Whalens point to no record support for their argument. We therefore affirm the dismissal as to Representative Martin on this ground, and do not address the immunity issue as to him.

superior court dismissed the claims against the state after the plaintiffs agreed that AS 09.50.250(3) granted the state immunity against defamation suits. The Whalens do not appeal the dismissal of their claims against the state.

## III. DISCUSSION

### A. Standard of Review

We review a grant of summary judgment de novo, viewing the facts presented in a light most favorable to the non-movant.[6] This review involves determining whether any genuine issues of material fact exist.[7] A grant of summary judgment will be upheld if there are any grounds to support the result reached by the trial court.[8]

We apply our independent judgment to questions of constitutional law and statutory interpretation, giving a reasonable and practical interpretation in accordance with common sense.[9]

### B. Because Representatives Hanley and Foster Acted Within the Scope of Their Legislative Duties, Legislative Immunity Protects Them from the Whalens' Defamation Claims.

The Whalens advance various theories why legislative immunity does not bar their claims against Representatives Hanley and Foster. Thus, they contend that Representatives Hanley and Foster had no legislative duty to question the Department of Administration's authority to settle the claims against Whalen and others. They contend that Representatives Hanley and Foster lost their immunity by knowingly or recklessly disregarding the falsity of their statements.

They assert that the defendants lost their immunity by excessive publication, by failing to restrict their statements to executive session, and by failing to redact information identifying Ronald Whalen. They argue that defendants had only conditional immunity, which they lost by publishing statements that did not advance a legislative purpose. And they contend that by exceeding their authority, the defendants lost their immunity because they acted outside the "sphere of legitimate legislative activity."[10]

At the heart of the Whalens' arguments is their contention that legislative immunity only protects legislators with respect to statements they make in the exercise of their legislative duties. They argue that Representatives Hanley and Foster acted outside the scope of their legislative duties when they "question[ed] Boyer's authority to enter into a settlement on the COLD payment issue." The Whalens argue that "only the State Affairs Committee has jurisdiction over activities of the Department of Administration, and therefore only that Committee had the legislative duty to question the actions of that department."[11] Representatives Hanley and Foster respond that the review and discussion of the COLD settlement at a legislative committee hearing "meets the definition of a core legislative activity that is protected by immunity."

The Alaska Constitution and the Alaska Statutes both provide immunity to legislators for statements made in the exercise of their legislative duties.[12] We have held that legislative duties include "activities internal to the legislature, such as voting, speaking on the floor of the House or in committee, authoring committee reports, in-

---

6. *Thoma v. Hickel*, 947 P.2d 816, 818 (Alaska 1997).

7. *Beilgard v. State*, 896 P.2d 230, 233 (Alaska 1995).

8. *Carlson v. State*, 598 P.2d 969, 973 (Alaska 1979).

9. *Muller v. BP Exploration, Inc.*, 923 P.2d 783, 787 (Alaska 1996); *Todd v. State*, 917 P.2d 674, 677 (Alaska 1996); *ARCO Alaska, Inc. v. State*, 824 P.2d 708, 710 (Alaska 1992) (citation omitted).

10. The Whalens cite *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), in support.

11. Boyer was then the Commissioner of the Alaska Department of Administration.

12. Article II, section 6 of the Alaska Constitution and AS 24.40.010 address legislative immunity. Both provide in part: "[Legislators] may not be held to answer before any other tribunal for any statement made in the exercise of [their] legislative duties."

troducing legislation, and questioning witnesses in legislative hearings." [13] Legislative immunity allows the legislature to question acts by the executive without intimidation.[14] It also protects legislators from "the burdens of forced participation in private litigation." [15]

Legislative immunity, where it applies, is absolute, and not merely qualified.[16] To avoid summary judgment, the Whalens at a minimum had to demonstrate that Representatives Hanley and Foster had some personal and identifiable role outside their legislative duties in disseminating the Boyer memorandum. Representatives Hanley and Foster's motion for summary judgment successfully argued that even if the document the Whalens allege was affixed to the minutes of the hearing—the defendants contended that it was not—"such actions are quintessential legislative acts that fall squarely within the scope of legislative immunity."

Legislative immunity under Alaska's constitution is patterned after the federal speech or debate clause.[17] We therefore look to the United States Supreme Court's interpretation of the scope of federal immunity as a model for determining the scope of legislative immunity under Alaska's constitution: The Supreme Court interprets federal legislative immunity broadly for actions properly within the legislative sphere and declines to impose liability regardless of whether the Court considers the legislative acts useful or necessary. "[W]e have no authority to oversee the judgment of the Committee ... or to impose liability on its Members if we disagree with their legislative judgment." [18]

Ronald Whalen's affidavit opposing summary judgment merely states that on March 20, 1996 the House Finance Committee discussed the COLD payments and the settlement, and that the minutes of that meeting, when published, included the Boyer memorandum. But the Whalens made no showing that the discussion of the payments or the settlement was outside the legislative sphere.

At most Ronald Whalen's affidavit attributes the distribution of the identifying documents to Representatives Hanley and Foster. Although there may be a genuine factual dispute about whether they actually had any part in the public dissemination of the Boyer memorandum, it is not a material dispute. Assuming they caused its public distribution, the question here is whether they are nonetheless protected by legislative immunity, as the superior court held.

This case does not require us to define with precision the ultimate limits of protection conferred by legislative immunity, or the scope of a committee's legislative duties protected by immunity. Taking all permissible factual inferences in favor of the Whalens, it cannot reasonably be said that these legislators acted outside the legislative sphere. The alleged publication of Whalen's name occurred while Representatives Hanley and Foster were carrying out legislative duties.

The Whalens' remaining appellate contentions concerning immunity require no extended discussion. Some—such as arguments that the legislators knowingly or

**13.** *Kerttula v. Abood,* 686 P.2d 1197, 1202 (Alaska 1984).

**14.** *Id.* (citing *Gravel v. United States,* 408 U.S. 606, 617, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972)).

**15.** *Id.* (citing *Gravel v. United States,* 408 U.S. at 617).

**16.** *Breck v. Ulmer,* 745 P.2d 66, 70 (Alaska 1987); *State v. Haley,* 687 P.2d 305, 319 (Alaska 1984); *Kerttula,* 686 P.2d at 1202–04; RESTATEMENT (SECOND) OF TORTS § 590 (1979) ("A member ... of a State or local legislative body is absolutely privileged to publish defamatory matter concerning another in the performance of his legislative functions."). *See also* RESTATEMENT (SECOND) OF TORTS § 590 cmt. a (1979) ("The privilege ... is not confined to conduct on the floor of the legislative body. It extends to the work of legislative

committees or sub-committees that are engaged in an investigation or other work authorized by the legislative body.").

**17.** *Kerttula,* 686 P.2d at 1201.

**18.** *Doe v. McMillan,* 412 U.S. 306, 313, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) (holding that members of Congress who had included description of children's behavior and identified children by name in committee report were immune from liability under federal speech or debate clause). *See also Shultz v. Sundberg,* 577 F.Supp. 1491, 1495 (D.Alaska 1984) (applying principle in *Doe* that congressmen who engage in legitimate legislative acts will be immune from liability even if their actions "raise significant state issues").

recklessly made false statements or should have limited the publication—are founded on an inaccurate assumption that legislative immunity is conditional, not absolute.

■ We therefore hold that the superior court did not err in granting summary judgment to Representatives Hanley and Foster.[19]

### C. The Superior Court Did Not Err by Dismissing Carol Whalen's Claim.

■ Carol Whalen argues that she was also entitled to assert a defamation claim, and that the superior court erred in dismissing her individual claim on the alternative ground she had no cause of action.

We do not need to decide whether Carol Whalen could assert an actionable defamation claim, even though, as the superior court observed, "[t]here is no evidence that indicates any reference to the wives in either the House Finance Committee meeting or the minutes." Whatever the possible merits of her claim, it is barred by absolute legislative immunity for the reasons we discussed above. We therefore do not consider the superior court's alternative ground for dismissing her individual claim.

### IV. CONCLUSION

We AFFIRM the summary judgment for Representatives Hanley and Foster.

---

**19.** The Whalens also argue that there was no need for legislative review by the House Finance Committee in March 1996 because the agreement between the state and Ronald Whalen was "A DONE DEAL." We reject this argument because we hold that review of the COLD payments and the accompanying settlement was properly within the committee's legislative duties.

The Whalens also assert in their reply brief that AS 09.50.250 waives immunity. This contention is completely without merit. The statute does not purport to waive or limit the legislative immunity conferred by article II, section 6 of the Alaska Constitution and AS 24.40.010.