66 F.3d 335
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Casworth JOK-EF, aka Jok-Ef Casworth Plaintiff-Appellant,
v.
COLUMBIA BASIN CLG., Defendant-Apellee.
 No. 94-35876.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 24, 1995.*
Decided Sept. 7, 1995.
 
 Before: CHOY, SNEED, and SKOPIL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Casworth Jok-ef appeals pro se the district court's summary judgment in favor of his former employer, Columbia Basin Community College ("CBC"),[1] in his action alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e-e17, as well as other federal and state claims. Jok-ef contends that the district court erred by (1) granting CBC's motion for summary judgment on all federal claims, and (2) dismissing his pendant state law claims. We affirm.
 
 I.
 
 3
 Jok-ef, who holds a master's degree from the University of California at Berkeley, entered into a contract for a mathematics instructor position with CBC on September 1, 1990. Jok-ef alleges that he was hired as a full time tenure-track probationary mathematics instructor. The initial faculty appointment period ran from September 12, 1990 through June 14, 1991.
 
 
 4
 As part of the CBC faculty, Jok-ef became a member of the Colombia Basin College Association for Higher Education ("AHE"). A labor agreement existed between the AHE and the CBC Board of Trustees which outlined the procedure for the Board to grant or deny tenure to the CBC faculty. Pursuant to Article IV of the AHE agreement, a Tenure Review Committee was developed. The Tenure Review Committee conducted evaluations of full-time probationary faculty members and made recommendations regarding tenure.
 
 
 5
 A separate Peer Review Committee was established to provide support for Jok-ef and to monitor his performance as a mathematics instructor. The committee consisted of Donna Campbell, the Instructional Director for the Math/Science Department who supervised Jok-ef's day-to-day teaching, Jok-ef, two faculty members, and a student, Vicky Lott. Jok-ef chose the student member as well as one of the faculty members on this committee. The chairman of the Peer Review Committee was Jim Reinkens, a tenured mathematics instructor.
 
 
 6
 During the 1990-91 academic year, Jok-ef received several evaluations. The probationary faculty evaluation given by the Peer Review Committee on November 16, 1990 indicated that Jok-ef had many areas that needed improvement. However, the second evaluation by the Peer Review Committee that year, dated January 31, 1991, was more positive. On March 7, 1991, the CBC Board of Trustees extended Jok-ef's contract for another academic year from September 11, 1991 through June 17, 1992.
 
 
 7
 On January 23, 1992, Campbell again evaluated Jok-ef's teaching performance. She gave Jok-ef higher marks in this evaluation than in the November 15, 1991 evaluation, however, she again stated areas for improvement. The Peer Review Committee performance evaluation of January 31, 1992 noted that all areas of Jok-ef's teaching performance showed improvement. Despite this improvement, on February 27, 1992, the Tenure Review Committee recommended that Jok-ef's contract not be renewed for the 1992-93 school year.
 
 
 8
 On March 3, 1992, the Board of Trustees voted not to continue Jok-ef's employment for the following year on the basis of the Tenure Review Committee's and Campbell's recommendations. On or about March 6, 1992, Jok-ef was notified of the Board's decision. He never appealed his contract termination and continued to teach his classes.
 
 
 9
 On April 9, 1992, five students from Jok-ef's statistics class went to see Campbell to complain that the class was a "disaster." That day, Campbell met with the entire class to discuss Jok-ef's performance. The majority of the class indicated that they were not learning statistics and that they wanted a new instructor.
 
 
 10
 After this meeting, Campbell decided to reassign Jok-ef to another position and sent her secretary to Jok-ef's classroom to instruct him to call her. When Campbell did not hear from Jok-ef, she prepared a memorandum requesting a meeting with him and Lemos at 1:15 p.m. Jok-ef left campus without contacting Campbell and alleged that he did not read the memorandum until he got home that evening.
 
 
 11
 When Jok-ef failed to respond, Campbell prepared a memorandum stating that she was removing him from teaching statistics and reassigning him to work in the tutoring center for a total of ten hours per week. She placed the memorandum in Jok-ef's mail slot on April 9, 1992. Campbell also called Jok-ef's home and left a message on his answering machine to meet with her the next day in Lemos' office at 8:00 a.m.
 
 
 12
 When Jok-ef did not attend the 8:00 a.m. meeting in Lemos' office, Campbell called Jok-ef at his office. During the telephone conversation, Jok-ef informed her that he wanted AHE representation at the meeting, that he needed time to arrange for representation, and that he would meet with her after he had eaten breakfast. The meeting never took place.
 
 
 13
 The president of CBC, Marvin Weiss issued a letter to Jok-ef relieving him of all teaching duties and reassigning him to the tutoring center for thirty hours per week for the remainder of the spring quarter.
 
 
 14
 Three white males were assigned to teach Jok-ef's classes for the remainder of the school year after Jok-ef was assigned to the tutoring center on April 10, 1992. Eventually, a white female was hired for the 1992-1993 academic year for the mathematics instructor position Jok-ef once held.
 
 
 15
 On or about April 13, 1992, Jok-ef filed a grievance pursuant to Article VIII of the AHE agreement, arguing that his contractual rights had been violated. On September 21, 1992, Jok-ef was notified of the Board of Trustees' decision to deny his grievance. Apparently on the advice of his AHE representative, Jok-ef decided not to seek arbitration.
 
 
 16
 On June 16, 1992, Jok-ef filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). On March 25, 1993, the District Director of the EEOC determined that CBC had not violated Title VII. On June 15, 1993, Jok-ef filed this Title VII action in the district court against CBC, Weiss, Campbell, Lemos, and Apolonio Coronado, former Dean of Instruction. In his amended complaint, filed July 15, 1993, Jok-ef alleged that CBC administrators (1) intentionally discriminated against him when they did not renew his employment contract, (2) retaliated against him after he wrote a letter to the president of CBC, and (3) violated his employment contract by not affording him due process before taking away two of his classes.
 
 
 17
 On May 31, 1994, CBC filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. On August 8, 1994, the district court granted CBC's motion for summary judgment and dismissed with prejudice Jok-ef's claims for race discrimination, retaliation, and denial of due process. The state law claims were dismissed without prejudice.
 
 II.
 Title VII Discrimination Claim
 
 18
 Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee on the basis of the employee's race. 42 U.S.C. Sec. 2000e-2(a)(1). Jok-ef proceeds under a disparate treatment theory. Under Title VII, a plaintiff must ultimately prove intentional discrimination to succeed on a disparate treatment theory. Gay v. Waiters' and Dairy Lunchmen's Union, Local 30, 694 F.2d 531, 537 (9th Cir.1982).
 
 
 19
 To establish a prima facie case of discrimination, the plaintiff must prove (1) that he is of a racial minority, (2) that he is qualified for the position, (3) that he was discharged, and (4) that the position was filled by a white person. See St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2747 (1993).
 
 
 20
 The district court properly found that Jok-ef established a prima facie case of intentional discrimination. He is black, he was qualified for the Math Instructor position, he was discharged, and his position was filled by a white woman. See Villanueva v. Wellesley College, 930 F.2d 124, 128 (1st Cir.1991) (articulating the elements of a prima facie case in disparate treatment actions involving tenure decisions). Because he made out a prima facie case, the burden then shifted to CBC to articulate a legitimate reason for its employment decision. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).
 
 
 21
 CBC rebutted the presumption of discrimination by presenting evidence from which a rational trier could find that Jok-ef's teaching ability was inadequate. CBC produced evaluations from both students and instructors that indicated that Jok-ef needed to improve his teaching skills. Furthermore, CBC alleged that Jok-ef failed to cooperate and complete a professional development plan designed to improve his teaching ability. Finally, CBC showed that Jok-ef refused to address CBC's concerns about his classes and simply denied that there were any problems. CBC asserted that Jok-ef, despite CBC's efforts, failed to make sufficient progress to justify an extension of his contract for a third academic year.
 
 
 22
 The burden of production then shifted back to Jok-ef to demonstrate that CBC's proffered reason was not the true reason for its employment decision but a pretext for discrimination. Burdine, 450 U.S. at 256.
 
 1. Statistical Evidence
 
 23
 To create a genuine issue of material fact, Jok-ef first introduced statistical data regarding the lack of tenured black faculty at CBC. Jok-ef presented evidence that between 1988 and 1993, there were five full-time black faculty members employed by CBC, including Jok-ef, but during that time, CBC granted tenure to 25 full-time white faculty members. As of April 4, 1994, there were no tenured black faculty members and only one full-time black faculty member.
 
 
 24
 The data illustrated that Blacks were significantly underrepresented at CBC. However, such evidence of a racially unbalanced work force did not, in and of itself, constitute conclusive proof of discriminatory intent. Statistical evidence has an "inherently slippery nature" and "can be exaggerated, oversimplified, or distorted to create support for a position that is not otherwise supported by the evidence." Spaulding v. University of Washington, 740 F.2d 686, 703 (9th Cir.) (citations omitted), cert. denied, 469 U.S. 1036 (1984).
 
 
 25
 Jok-ef's statistics were unreliable because there were many missing variables. Jok-ef presented evidence indicating that there were no black faculty members given tenure during the 1988-93 academic years. However, he failed to provide evidence of the number of black faculty members who were eligible for tenure and failed to show how many black faculty members were hired for tenure positions. Furthermore, Jok-ef did not provide information on how many white instructors applied for tenure during the five-year period. The district court correctly refused to rely on such poor statistical evidence. See Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072, 1076 (9th Cir.1986). Statistical evidence by itself is not sufficient to avoid summary judgment unless such evidence reveals " 'a clear pattern [of discrimination], unexplainable on grounds other than race.' " See Gay, 694 F.2d at 552 (quoting Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 252 (1977)).
 
 2. Treatment of Former Instructor
 
 26
 Additionally, Jok-ef pointed to an incident involving a fellow black faculty member, Maxine Murray, to establish that CBC's reason for terminating his employment was discriminatory. Murray was hired as a replacement instructor to teach philosophy and logic from August, 1991 through June, 1992.
 
 
 27
 Murray alleged that a disruptive student, who made complaints to the administration about her teaching ability and availability outside of class, was motivated by racial animus. The complaint prompted Russ Schmeeckle, who was the Instructional Director of the Humanities Department, to go directly into the classroom in order to ask the students to evaluate Murray. Murray asserted that Schmeeckle undermined her authority as an instructor by evaluating her in this manner. After Murray refused another assignment to teach logic, she was reassigned to the tutoring center where she taught remedial writing. Murray claimed that she did not receive support from the CBC administration and that she was treated unfairly because of her race.
 
 
 28
 There are similarities in the situations of Jok-ef and Murray. Students complained about both instructors, the head of the department investigated these complaints, students were told to evaluate each instructor, and both were ultimately reassigned to the tutorial center. Although Murray and Jok-ef's experiences were similar in some respects, Murray's situation does not contribute to illustrating a pattern or practice of racial discrimination. First, Murray failed to cite to objective evidence of disparate treatment by CBC; she only alleges, with little support, that the disruptive student was motivated by racial animus. Second, CBC assigned Murray to the tutoring center only after she refused to teach the logic class for which she was hired. At any rate, CBC never hired Murray for a tenure-track position.
 
 3. Double Standard
 
 29
 Next, Jok-ef alleged that he was held to a higher standard than other non-minority instructors and that CBC administrators maintained a double standard in evaluating black and white faculty members. An individual may establish discrimination when she is treated less favorably than others similarly situated on the basis of her race. Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir.1988). Discriminatory intent "can in some situations be inferred from the mere fact of differences in treatment." International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977). A discharged employee can demonstrate disparate treatment by showing that similarly situated non-minority employees were not discharged for similar violations of equal seriousness. See Garrett v. City and County of San Francisco, 818 F.2d 1515, 1519 (9th Cir.1987).
 
 
 30
 As one example of disparate treatment, Jok-ef asserted that CBC ultimately tenured a white faculty member who gave a test in which all of the students failed. Jok-ef, however, did not offer any evidence that students complained of this instructor's teaching ability or assert that this instructor received any negative evaluations from students or faculty. Jok-ef, therefore, failed to demonstrate that his teaching performance was similar to that of the white instructor.
 
 
 31
 As another example of disparate treatment, Jok-ef alleged that Kent Noffsinger, a white instructor, was given a year to complete a Developmental Plan, in contrast to the six months given to Jok-ef. The difference in the amount of time allotted to complete the plan as proof of disparate treatment, however, was undermined by the fact that Noffsinger also was denied tenure.
 
 
 32
 Jok-ef argued that CBC should not have relied upon the evaluations by the students in his classes and pointed out that CBC renewed the contracts of white faculty members who had difficulties in the past. Jok-ef, however, failed to provide any example of a white instructor who experienced as much difficulty as Jok-ef did with his classes and ultimately had his contract renewed.
 
 4. Campbell's Remarks
 
 33
 Jok-ef alleged that Campbell made two insensitive racial remarks. According to Jok-ef, Campbell told him, "You don't seem to realize what culture you are in, this is a white culture," and, "I know [controlling your voice level] is hard to do since Blacks are loud by nature...." One inference that reasonably can be drawn from these statements is that Campbell felt that there was something wrong with Jok-ef's teaching style and ability because he is black. Even if Jok-ef did establish that Campbell made racist comments, which Campbell emphatically denies, the comments alone were not sufficient to convince a rational trier that Jok-ef was a victim of discrimination. While such remarks are disturbing, they are insufficient to withstand a motion for summary judgment in the face of the weight of evidence supporting CBC's assertion that Jok-ef's contract was not renewed because he lacked the requisite instructional skills. See Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir.1990) (stating that stray remarks or isolated comments unsupported by other evidence of discriminatory motivation will not create a triable issue).
 
 III.
 Title VII Retaliation Claim
 
 34
 It is unlawful for an employer to retaliate against an employee because the employee has taken action to enforce rights protected under Title VII. 42 U.S.C. Sec. 2000e-3(a). Jok-ef asserted that he was terminated in retaliation for a letter he wrote to Weiss, Coronado, and Lemos on December 16, 1991, protesting the unfair evaluation of his classes and asserting that there was an attempt to "lynch" his classes.
 
 
 35
 Jok-ef's retaliation claim fails for two reasons. First, Jok-ef failed to demonstrate that his December 16th letter is a protected activity. A letter protesting unspecified "racism" and "discrimination" in employer practices is protected opposition activity. EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012-13 (9th Cir.1983); see also Sias v. City Demonstration Agency, 588 F.2d 692, 695-96 (9th Cir.1978) (employee's letter to HUD complaining of employment discrimination against him and other Hispanics is protected). Jok-ef's letter does not constitute an activity protected by Title VII because Jok-ef did not complain of unfair treatment on the basis of his race in the letter. Rather, he simply asserted that the CBC faculty unfairly evaluated his classes.
 
 
 36
 Even if the letter were considered to be a protected activity, however, Jok-ef's retaliation claim would fail because he has not demonstrated a causal link between the letter and the nonrenewal of his contract. Jok-ef failed to provide evidence which showed that the Board of Trustees or the Tenure Review Committee had knowledge of the letter Jok-ef had addressed to Weiss, Coronado, and Lemos. Accordingly, we affirm the district court's granting of summary judgment on Jok-ef's retaliation claim.
 
 IV.
 Section 1983 Discrimination
 
 37
 Next, Jok-ef alleges that CBC denied him tenure in violation of 42 U.S.C. Sec. 1983. Jok-ef may challenge actions committed under color of state law that amount to a deprivation of federal constitutional or statutory rights. Smith v. Barton, 914 F.2d 1330, 1333 (9th Cir.1990), cert. denied, 501 U.S. 1217 (1991). In order to prove discrimination in violation of Sec. 1983, Jok-ef must demonstrate that CBC acted with the intent to discriminate. Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1112 (9th Cir.1991). We have held above that Jok-ef failed to make a showing of intent to discriminate in his Title VII disparate treatment claim. See Gay, 694 F.2d at 537. "A plaintiff who fails to establish intentional discrimination for purposes of Title VII ... also fails to establish intentional discrimination for purposes of Sec. 1983." See Sischo-Nownejad, 934 F.2d at 1112. We need not consider whether CBC is an arm of the state and thus immune from Sec. 1983 liability, but affirm the district court's summary judgment dismissal on the ground that Jok-ef failed to establish an intent to discriminate.
 
 V.
 Procedural Due Process
 
 38
 "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). To prevail on a Sec. 1983 due process claim, the plaintiff must show that: (1) he had a liberty or property interest protected by the Constitution, (2) there was a deprivation of the interest by the government, and that (3) there was a lack of process. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir.1993). "Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." Roth, 408 U.S. at 577. A mere unilateral expectation that employment will continue does not create a property interest. Id.
 
 
 39
 Jok-ef failed to show that he had a property interest in his employment. Jok-ef was designated a probationary employee under the terms of his contract with CBC. According to Washington State law, a probationary faculty appointment is "faculty appointment for a designated period of time which may be terminated without cause upon expiration of the probationer's terms of employment." Wash.Rev.Code Sec. 28B.50.851(3) (1994). Because Jok-ef was employed on a year-to-year basis, he cannot claim reasonably that he had a right to continued employment. Moreover, Jok-ef's employment did continue, albeit in a different capacity. He did not allege, let alone show, that his contract with CBC did not allow him to teach in the tutorial center.
 
 
 40
 Jok-ef failed to establish that he was deprived of a property interest regarding his position with CBC. Therefore, we affirm the district court's granting of summary judgment on Jok-ef's due process claim.
 
 VI.
 Unfair Labor Practice
 
 41
 The Supreme Court has held that under the National Labor Relations Act ("NLRA"), 29 U.S.C. Secs. 151-158, 159-169, employees retain the right to have a union representative present at an investigatory interview with the employer where "the risk of discipline reasonably inheres...." NLRB v. J. Weingarten, Inc., 420 U.S. 251, 262 (1975). However, section 2(2) of the NLRA exempts public employers from the definition of "employer" and consequently from the coverage of the NLRA. 29 U.S.C. Sec. 152(2) ("When used in this subchapter ... [t]he term 'employer' ... shall not include ... any State or political subdivision thereof...."); see also Associated Builders and Contractors, Inc. v. City of Seward, 966 F.2d 492, 496 (9th Cir.1992), cert. denied, 113 S.Ct. 1577 (1993).
 
 
 42
 CBC, as a state-run community college, falls within the definition of a public sector employer. Because public sector labor relations are not within the scope of the NLRA, the district court did not err by granting summary judgment on Jok-ef's unfair labor practice claim.
 
 VII.
 State Claims
 
 43
 Finally, Jok-ef contends that the district court erred by dismissing his state law claims. We review a district court's dismissal of pendant state claims for abuse of discretion. Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir.1985). Where federal claims are dismissed before trial, pendant state claims should also be dismissed. Jones v. Community Redevelopment Agency, 733 F.2d 646, 651 (9th Cir.1984).
 
 
 44
 The district court found that if the actions of the defendants gave rise to a claim, such a claim would be a state law claim arising under the AHE contract or a state statute. Because the federal claims were properly dismissed, the district court did not abuse its discretion by dismissing Jok-ef's state law claims. See Jones, 733 F.2d at 651.
 
 VIII.
 Conclusion
 
 45
 Jok-ef failed to establish either a Title VII claim or a Sec. 1983 claim because he could not demonstrate that CBC was motivated by discriminatory intent when it altered and then terminated his employment. Likewise, Jok-ef failed to demonstrate that he was deprived of due process because he did not show that he had a constitutionally-protected property interest in his job. Finally, because Jok-ef's employment with CBC, a public institution, was not covered by the NLRA, Jok-ef could not make out an unfair labor practice claim.
 
 
 46
 Accordingly, we affirm the district court's grant of summary judgment as well as its dismissal of Jok-ef's state claims.
 
 
 47
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although Marvin W. Weiss (former president of CBC), Apolonio Coronado (former Dean of Instruction), Donna Campbell (Instructional Director), and Ruben Lemos (Associate Dean of Human Resources) appear to have been named as defendants in this action, the district court noted that there is no indication that any of the individual defendants have ever been served. Thus, we review the district court's decision solely as to CBC