**Philip A. DENNEY, Plaintiff,**

v.

**DRUG ENFORCEMENT ADMINISTRATION, et al, Defendants.**

**No. CIV.S–06–1711 LKK/GGH.**

United States District Court, E.D. California.

Aug. 15, 2007.

Zenia Karen Gilg, Law Offices of Zenia K. Gilg, San Francisco, CA, for Plaintiff.

Yoshinori H.T. Himel, United States Attorney's Office, Sacramento, CA, Gary Charles Brickwood, Brickwood Law Office, Redding, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiff, a California physician, has brought a First Amendment challenge based upon the alleged undercover investigation of his medical office by defendants. Plaintiff contends that defendants, who include the DEA and various state and federal officials, conducted a retaliatory investigation in response to his speech concerning medical marijuana, in violation of the injunctive order upheld in *Conant v. Walters,* 309 F.3d 629 (9th Cir.2002). Pending before the court is the federal defendants' motion to dismiss and motion for summary judgment, as well as plaintiff's application for a continuance under Rule 56(f) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court denies the motion to dismiss and motion for summary judgment with respect to the First Amendment and equal protection claims, grants the motions with respect to the remaining claims, and grants plaintiff's application for a continuance.

## I. Facts

### A. Plaintiff

Plaintiff Philip Denney is physician who has been licensed to practice medicine in the State of California since 1977. First Am. Compl. ("Compl.") ¶ 5. Since graduating medical school at the University of Southern California, he has practiced Family, Emergency, and Occupational Medicine. *Id.* He has never been disciplined by the state medical board, nor has he had his hospital privileges revoked, suspended, or restricted. *Id.* In addition to other locations, Dr. Denney has a medical office located in Redding, California, the site of the activities at issue in this case. *Id.*

Dr. Denney is an outspoken proponent of medical marijuana. He has been qualified to testify as an expert witness regarding the use of cannabis in at least seventeen counties in California, has testified before the California Medical Board regarding medicinal cannabis, and is a founding member of the Society of Cannabis Clinicians. *Id.*

### B. Undercover Visits to Plaintiff's Office

On two occasions, defendants sent in either a confidential source ("CS") or undercover agent in order to obtain a medical marijuana recommendation from Dr. Denney. The government asserts that the background to both visits was the investigation of the Dixon Herbs marijuana dispensary in Redding. It claims that as part

of this investigation, the Redding Police Department had previously sent confidential informants ("CIs") to attempt to buy marijuana from Dixon Herbs in September 2005. Defs.' Statement of Undisputed Fact ("SUF") ¶¶ 4–5. One, who had a medical marijuana recommendation, was successful, whereas another, who did not have a recommendation, was not. *Id.*

On September 20, 2005, a CS for the DEA attempted to buy marijuana from Dixon Herbs without a marijuana recommendation. Compl. ¶ 9. As with the Redding Police Department CI who did not have a recommendation, the DEA CS was also turned away. *Id.* He was, however, allegedly told to ask for someone by the name of "Amber" at Dr. Denney's office, who might be able to facilitate a recommendation. SUF ¶ 7.

### 1. September 21, 2005 Visit

The next day, on September 21, 2005, the CS went to Dr. Denney's office and asked if he could see the doctor. Compl. ¶ 11. The receptionist asked for his/her medical records, which the CS reported were unavailable because he/she had recently moved from Mississippi and that the records had been destroyed in Hurricane Katrina. *Id.* The receptionist went out of the office and, it is claimed, looked at the CS' vehicle to confirm that it had Mississippi license plates, which it did. *Id.*

Thereafter, Dr. Denney examined the CS, whose chief complaint was a pinched sciatic nerve that caused chronic pain. *Id.* Dr. Denney asked if he/she attempted other mainstream prescription medications, and was told that he/she did, but that these medications caused stomach problems. *Id.* Plaintiff then indicated that the CS was a candidate for the medical use of marijuana and explained that it was to be used only as recommended, not as a recreational drug. *Id.* He then gave the CS a written recommendation. *Id.*

While the CS was inside, an investigator surveilled the office from the street. Ex. G. Although fitting the CS with a convert transmitter or monitoring device had apparently been considered, the investigators decided against it because the transaction was to take place within a doctor's office. *Id.* Before the CS entered the office, the investigators checked him for contraband and money and established a prearranged meeting point where they were to meet after he left plaintiff's office. *Id.*

On September 27, 2005, the CS bought marijuana at Dixon Herbs assertedly using the marijuana recommendation obtained from plaintiff. SUF ¶ 10.

### 2. November 9, 2005 Visit

On November 9, 2005, defendants DEA Agent Dennis Hale, ATF Agent Steven Decker, and Redding Police Officers Tracy Miller and Eric Wallace conducted a briefing regarding the procurement of a medical marijuana recommendation from plaintiff. Compl. ¶ 12. Agent Decker was chosen to procure the marijuana recommendation and use it at Dixon Herbs because he was the only conveniently available agent with an appropriate undercover identity. SUF ¶ 16. The investigators then approached plaintiff's office and surveilled it while Agent Decker was inside. SUF ¶ 18.

Using a false driver's license, Agent Decker told plaintiff's receptionist that his name was Steven Hoffmaster. Compl. ¶ 18. When asked for prior medical records, he stated that he had been to a hospital in Santa Clara but could not recall which one. *Id.* The receptionist called several hospitals in Santa Clara, but found no record of a Steven Hoffmaster. *Id.* Agent Decker was told that the examination could proceed while the receptionist tried to locate his prior medical records. *Id.*

During the examination, Agent Decker told Dr. Denney that he had been in a motorcycle accident, which caused him to have daily pain in his neck. Compl. ¶ 15. Agent Decker then showed plaintiff a scar on his neck, the product of the alleged motorcycle accident. *Id.* After the examination, Dr. Denney provided a written recommendation to Agent Decker approving of the use of medical marijuana. *Id.*

On November 21, 2005, Agent Decker bought marijuana from Dixon Herbs. SUF ¶ 23. On December 5, 2005, a state court search warrant was executed at Ron Dixon's residence, resulting in the seizure of marijuana. SUF ¶ 24. On the same day, a state court search warrant was executed at Dixon Herbs, resulting in the seizure of marijuana, scales, and three firearms. SUF ¶ 25. Dixon and two associates were arrested. *Id.* The state court criminal action against Ron Dixon has survived preliminary hearing and is set for trial. SUF ¶ 27.

## C. Procedural History

Although both sides in this case have exchanged mandatory initial disclosures, no discovery has taken place. On February 1, 2007, the federal defendants filed a motion for protective order, staying discovery until resolution of their pending motion to dismiss and motion for summary judgment. On February 13, plaintiff stipulated to the stay in discovery, and the magistrate judge accordingly stayed all discovery until the resolution of defendants' motions. In addition to its opposition to the motion, plaintiff has filed an application for a continuance under Federal Rule of Civil Procedure 56(f), which provides that "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had."

## II. Standard

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Fed. R.Civ.P. 12(b)(1)

■ It is well established that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.

■ If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See* 2A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 12.07 (2d ed.1987); *see also Eaton v. Dorchester Development, Inc.,* 692 F.2d 727, 731 (11th Cir.1982); *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). A complaint will be dismissed for lack of subject matter jurisdiction (1) if the case does not "arise under" any federal law or the United States Constitution, (2) if there is no case or controversy within the meaning of that constitutional term, or (3) if the cause is not one described by any jurisdictional statute. *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

██ If the challenge to jurisdiction is made as a "speaking motion" attacking the truth of the jurisdictional facts alleged by the plaintiff, a different set of standards must be applied. *Thornhill Pub. Co., Inc. v. General Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). Where the jurisdictional issue is separable from the merits of the case, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983); *Thornhill,* 594 F.2d at 733. "In such circumstances '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Augustine,* 704 F.2d at 1077 (quoting *Thornhill,* 594 F.2d at 733).

> However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.

*Augustine,* 704 F.2d at 1077 (citing *Thornhill,* 594 F.2d at 733–35; 5B C. Wright & A. Miller, *Federal Practice & Procedure* § 1350, at 558 (1969 & Supp.1987)). On a motion going to the merits, the court must, of course, employ the standard applicable to a motion for summary judgment. *Farr v. United States,* 990 F.2d 451, 454 n. 1 (9th Cir.1993), *cert. denied,* 510 U.S. 1023, 114 S.Ct. 634, 126 L.Ed.2d 592 (1993).

**B. Motion to Dismiss for Failure to State a Claim Under Fed.R.Civ.P. 12(b)(6)**

██ On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id.; see also Wheeldin v. Wheeler,* 373 U.S. 647, 648, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

██ In general, the complaint is construed favorably to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court may not dismiss the complaint if there is a reasonably founded hope that the plaintiff may show a set of facts consistent with the allegations. *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1967–69, 167 L.Ed.2d 929 (2007). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

**C. Summary Judgment Under Fed. R.Civ.P. 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26

L.Ed.2d 142 (1970); *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 853 (9th Cir.1995).

■ Under summary judgment practice, the moving party

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322, 106 S.Ct. 2548. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also First Nat'l Bank of Ariz. v. Cities Serv.*

*Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Ltd.*, 51 F.3d at 853.

■ In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11, 106 S.Ct. 1348; *see also First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575; *Rand v. Rowland*, 154 F.3d 952, 954 (9th Cir.1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Owens v. Local No. 169, Ass'n of Western Pulp and Paper Workers*, 971 F.2d 347, 355 (9th Cir.1992) (quoting *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *see also Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1228 (9th Cir.2000).

■ In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 290, 88 S.Ct. 1575; *see also T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587, 106

S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985).

■■■ In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir.1999). The evidence of the opposing party is to be believed, *see Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *see Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*)); *see also Headwaters Forest Def. v. County of Humboldt*, 211 F.3d 1121, 1132 (9th Cir.2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd*, 810 F.2d 898, 902 (9th Cir.1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

## III. Analysis

Plaintiff alleges that the federal defendants (1) violated his First Amendment rights, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), (2) conspired to interfere with his rights under the due process and equal protection clauses, 42 U.S.C. § 1985(3), and (3) failed to prevent the objectives of this alleged conspiracy, 42 U.S.C. § 1986. He seeks damages as well as injunctive and declaratory relief.

### A. First Amendment Claim

#### 1. *Conant v. Walters*

The crux of plaintiff's First Amendment claim is that defendants engaged in an investigation of his medical practice as an act of retaliation for his speech concerning medical marijuana. In *Conant*, the Ninth Circuit upheld a permanent injunction enjoining the government from revoking a physician's license to prescribe controlled substances based solely on the physician's professional recommendation of the use of medical marijuana, and, as particularly relevant here, from conducting an investigation of a physician based on the same impermissible motive. 309 F.3d at 636.

■■■ *Conant's* holding is premised on the notion that a physician's candid discussion of the advantages and disadvantages of medical marijuana with his or her patient is speech protected by the First Amendment. *See Rust v. Sullivan*, 500 U.S. 173, 200, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (noting that regulations on physician speech may "impinge upon the doctor-patient relationship"). *Conant* held that punishing physicians for recommending medical marijuana to their patients is a form of content discrimination as well as viewpoint discrimination. *Conant*, 309 F.3d at 637 ("[T]he [government's] policy does not merely prohibit the discussion of marijuana; it condemns expression of a particular viewpoint, i.e., that medical marijuana would likely help a specific patient.").

*Conant* rejected the government's argument that the injunction would protect

criminal conduct. The court held that a doctor's mere anticipation that the patient would use his or her recommendation to procure marijuana in violation of federal law would not, without more, be sufficient to trigger aiding and abetting liability. *Id.* at 635–36. The district court noted earlier that there are lawful and legitimate responses to a medical marijuana recommendation. The patient, armed with the doctor's recommendation, may urge the federal government to change the law. *Conant v. McCaffrey*, 2000 WL 1281174 at *14 (N.D.Cal. Sept.7, 2000) (noting that "many patients depend upon discussions with their physicians as their primary and only source of sound medical information").[1]

*Conant* further rejected the government's argument that the injunction against investigations of physicians would hamper law enforcement efforts. "Because a doctor's recommendation does not itself constitute illegal conduct, the portion of the injunction barring investigations solely on that basis does not interfere with the federal government's ability to enforce its laws." *Conant*, 309 F.3d at 636. Furthermore, the *Conant* injunction does not bar investigations where the government has a good faith belief that it has substantial evidence of criminal conduct. *Id.*

■ Although *Conant* arose against the backdrop of a federal policy of revoking the drug prescription licenses of doctors who recommended marijuana, its holding, contrary to the federal defen-

dants' portrayal, is not limited to license revocation. Rather, the district court also forbade any investigation of a doctor solely on the basis that he or she recommended medical marijuana. In other words, an investigation motivated by disagreement with the doctor's speech, even if not directly connected to the ultimate objective of license revocation, is nevertheless barred by the *Conant* injunction.[2]

### 2. Elements of Retaliatory Investigation Claim

■ In order to prove a retaliatory investigation claim, plaintiff must demonstrate that (1) defendants possessed an impermissible motive to interfere with his First Amendment rights, (2) that defendants' conduct would chill a physician of ordinary firmness from future First Amendment activities, and (3) that the defendants would not have engaged in the conduct in question but for the retaliatory motive. *See Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir.1999); *Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695, 1703, 164 L.Ed.2d 441 (2006). Although defendants claim, as an initial matter, that plaintiff has not even alleged that he was investigated, the complaint, fairly read, encompasses such an allegation. Compl. ¶ 1 ("[D]efendants have been accused by Plaintiff of implementing and enforcing an investigative practice and policy which is designed to, and resulted in, the violation of Plaintiff's constitutional rights, as articulated in the case of *Conant v. Ashcroft.*").

1. Alternately, the patient may lawfully procure marijuana with the recommendation by enrolling in a federally-approved experimental marijuana therapy program or traveling to a country where marijuana is legal. *Conant*, 2000 WL 1281174 at *15.

2. To be clear, however, plaintiff need not seek relief in the Northern District of California, where the injunction was originally issued. Although, as described above, the rule of *Co-*

*nant* forbids investigations motivated by retaliation, the facts of this case are not identical to those in *Conant* for the simple reason that this is not a license revocation case. Furthermore, the parties between this case and *Conant* are not identical. Dr. Denney has sued state officials in addition to federal officials, and has named federal defendants not party to *Conant* (e.g., the Bureau of Alcohol, Tobacco, Firearms, and Explosives).

### a. Motive

 First, defendants maintain that the purpose of the undercover visits was not to investigate plaintiff, but merely to obtain written marijuana recommendations so that they could buy marijuana at Dixon Herbs and make a criminal case against Ron Dixon. As support, they note that a Redding Police Department CI who had previously attempted to enter Dixon Herbs without a recommendation was barred from doing so. SUF ¶ 5. Furthermore, the DEA CS only went to plaintiff's office after being first turned away from Dixon Herbs and then referred to plaintiff's office. Compl. ¶¶ 9–10; SUF ¶ 7.

In response, plaintiff argues that the visits to his office bore all the traditional hallmarks of investigation. For example, plaintiff notes that when the CI was in the medical office, an agent was outside conducting surveillance. Furthermore, although a covert transmitter and monitoring device was not used, it was at least considered. Additionally, the CI was searched before and after the office visit, the police report described the incident as a "controlled buy of a marijuana prescription," and recorded funds were used. Ex. G.

 While there may have been other reasons for the defendants' meticulous care in procuring a marijuana recommendation from plaintiff and preserving an ostensible chain of custody,[3] there is at least a genuine dispute that defendants were investigating plaintiff. This is true in spite of the declaration of Dennis Hale, the federal case agent, which states that there has been no investigation of plaintiff. Decl. of Dennis Hale ("Hale Decl.") ¶ 28.

The intent to inhibit speech, like the existence of a conspiracy, can be demonstrated here through direct or circumstantial evidence, *Mendocino*, 192 F.3d at 1301–02, and, here, the circumstances at least permit the inference that plaintiff was under investigation for his speech concerning medical marijuana.

 This is so because, "[q]uestions involving a person's state of mind ... are generally factual issues inappropriate for resolution by summary judgment." *Braxton–Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir.1985); *see also Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir.1984) ("Summary judgment is generally inappropriate when mental state is an issue, unless no reasonable inference supports the adverse party's claim."). Clearly, the motivation of those ordering the investigation goes to their state of mind, and thus is ordinarily inappropriate for resolution on summary judgment.

This remains a factual dispute even if, as the federal defendants argue, they had not heard of Dr. Denney until a man at Dixon Herbs referred the CS to plaintiff's office. Hale Decl. ¶ 5. Although under such circumstances, it appears fairly clear that Dr. Denney was not the target of the investigation when it began, this does not foreclose the possibility that the investigation expanded to include him once the CS was referred by Dixon Herbs to plaintiff's office. What matters, for purposes of making out a First Amendment violation, is that the officials possessed a retaliatory animus at the time the CS and undercover agent visited plaintiff's office.

Plaintiff has also pled and proven sufficient facts regarding the existence of conspiratorial agreement at the present junc-

---

3. For example, defendants argue that the surveillance was conducted because of agency procedures requiring backup for agents working undercover. *See* Hale Decl. ¶ 11. In addition, defendants maintain that the funds were recorded to prevent the CS from thinking that he or she could steal them.

ture. As with the existence of retaliatory motive, the existence of an agreement or meeting of the minds may be inferred from circumstantial evidence. *See Mendocino*, 192 F.3d at 1301. Here, plaintiff has identified the specific defendants allegedly involved, the nature and time of the alleged investigative activities (sending in a CS on September 21, 2005 and an undercover agent on November 9, 2005), and the manner in which plaintiff was affected. This is a sufficient factual allegation from which a fact-finder could infer the existence of a conspiracy.

### b. Chilling of Speech

Second, defendants argue that plaintiff has not pled nor proven that a physician of ordinary firmness would be deterred from speaking about medical marijuana in light of two undercover visits. Defendants assert that "the physician has nothing to fear so long as the physician is . . . not running a script mill but engaging in the practice of medicine." Defs.' Mot. at 23 (internal quotes omitted).

 This turns the holding of *Conant* on its head. Defendants' argument, if carried to its logical conclusion, would mean that the injunction in *Conant* was unnecessary. Because a physician's recommendation of medical marijuana to a patient is not illegal, they should also have nothing to fear from an investigation. The problem, however, is that a physician of ordi-

nary firmness who was only engaging in lawful speech concerning medical marijuana could, in fact, be chilled by a federal investigation. As Judge Kozinski noted in his concurrence in *Conant*, "[p]hysicians are particularly easily deterred by the threat of governmental investigation and/or sanction from engaging in conduct that is entirely lawful and medically appropriate," in part because an investigation may harm a physician's reputation. 309 F.3d at 640 n. 2. Here, the question of whether or nor a physician of ordinary firmness would be chilled by two undercover visits is, at the least, an issue on which reasonable minds could disagree.

### c. Causation

Third, defendants argue that the element of causation is lacking. Plaintiff must plead and prove that the challenged investigative activities would not have been undertaken but for the defendants' retaliatory animus. *See Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695, 1703–04, 164 L.Ed.2d 441 (2006) ("[T]he causation is understood to be but-for causation, without which the adverse action not have been taken; we say that upon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have take the action complained of.").[4] Although previous Ninth Circuit law suggested that plaintiffs

---

4. The court declines to adopt the more stringent probable cause standard urged by defendants. In *Hartman*, the Supreme Court held that plaintiffs alleging retaliatory prosecution claims were required to prove that the prosecutor lacked probable cause, rather than merely that the retaliatory action would have been taken absent a retaliatory motive. 126 S.Ct. at 1704–05. This is because prosecutors are entitled to absolute immunity, and the defendant in a retaliatory prosecution case is typically a non-prosecutor, such as an inspector, who may have induced the prosecution decision but did not make it himself. Due to

this attenuated chain, plaintiffs must prove the absence of probable cause to bridge the gap between the official's motive and the prosecutor's action.

Here, however, the problem of multi-layered causation does not exist. The officials charged with having a retaliatory motive are the same officials who conducted the investigation of Dr. Denney's office. Accordingly, the heightened probable cause standard is inappropriate here. *See Skoog v. County of Clackamas*, 469 F.3d 1221, 1234 (9th Cir. 2006) ("Causation [ ] turns on [defendant's]

need only prove that the retaliatory animus was a "substantial or motivating factor," *see Mendocino,* 192 F.3d at 1300; *Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994), it appears that *Hartman* has elevated the requisite standard to but-for causation.

██ Here, defendants maintain that they would have sent the undercover visitors to plaintiff's office even without the alleged retaliatory motive. They note that they needed a medical marijuana recommendation in order to purchase marijuana from Dixon Herbs, and that it was Dixon Herbs who referred the CS to plaintiff's office. In short, defendants argue that there is no chain of causation to connect the alleged unconstitutional motive with the undercover visits.

Plaintiff responds that there were other methods of investigation available that would not have abridged plaintiff's First Amendment rights. For example, plaintiff maintains that defendants could have forged a medical marijuana recommendation, just as law enforcement creates false identity documents for undercover agents. Alternately, plaintiff suggests that law enforcement could have openly enlisted plaintiff's assistance without fraud or deception. Plaintiff also argues that the defendants' assertion that they would have conducted their investigation in the same way absent a retaliatory motive is self-serving and therefore unreliable.

Given the present record before the court, and the absence of any discovery, the court finds that discovery may reveal sufficient factual disagreement to render summary judgment inappropriate. Admittedly, the alternate investigative techniques cited by plaintiff appear somewhat questionable. The use of a forged marijuana recommendation could be exposed by a confirmation phone call to Dr. Denney's office.[5] Nevertheless, perhaps Dixon Herbs did not have a practice of verifying recommendations, or perhaps the use of a forged recommendation would have the superior investigative choice (taking into account all the advantages, disadvantages, and relative burdens of using undercover visits versus using a forged recommendation) but for a retaliatory motive.

Similarly, the open enlistment of plaintiff's assistance might have compromised the secrecy of the investigation. *See* Hoernke Decl. ¶ 9 (describing the open solicitation of Dr. Denney's cooperation as "not a good suggestion"). Nevertheless, plaintiff is entitled to develop an evidentiary basis to support his claim that this was a superior investigative technique that would have been selected but for defendants' retaliatory motive. Additionally, even if defendants prove that obtaining a recommendation from a doctor by the use of fraud was the soundest path to obtaining a conviction against Dixon Herbs, plaintiff might be able to prove that there was another doctor that defendants should have used rather than plaintiff. These are all issues that require discovery, and therefore preclude summary judgment at the present stage of the proceedings.

### 3. Injunctive Relief

With regard to injunctive relief, defendants argue that plaintiff lacks standing

---

actions alone and no 'bridge' between motive and action is necessary. Thus, the rationale for requiring the pleading of no probable cause in *Hartman* is absent here. This case presents an ordinary 'retaliation' claim.").

**5.** Defendants also suggest that it was impossible to forge the recommendation because they had never seen one before, but have not provided evidence on this issue. The declaration of Resident Agent in Charge Scott Hoernke simply stated that "[t]he investigation needed a genuine recommendation to gain entree into Dixon Herbs." Hoernke Decl. ¶ 8.

and has failed to satisfy the equitable requirements for injunctive relief.

### a. Standing

In order to meet constitutional standing requirements, plaintiffs must prove (1) injury in fact, (2) causation, and (3) redressability. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir.2000).

With regard to injury in fact, plaintiff alleges two interrelated but distinct harms. First, plaintiff alleges that the undercover visits have chilled his speech and made him fearful of discussing the medical benefits of marijuana with his patients. Second, plaintiff alleges that the undercover visits have made him suspicious of his patients, some of whom he has turned away for fear that they were using false identification provided by law enforcement. Defendants respond that whereas criminal prosecution can threaten liberty, mere investigations cannot. Furthermore, defendants argue that suspicion and anxiety do not constitute cognizable injury, as they are "the type of harm which necessarily accompanies many official investigations." *Hunter v. SEC*, 879 F.Supp. 494, 502 (E.D.Pa.1995).

The court disagrees. If harm to a doctor's ability to "speak frankly and openly to patients," *Conant*, 309 F.3d at 636, was not a cognizable injury, the *Conant* injunction would never have issued in the first instance. *See also Cal. Pro–Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir.2003) (finding, in the context of a pre-enforcement challenge, that self-censorship can be a "constitutionally recognized injury").

With regard to causation and redressability, defendants argue that because there were only two undercover visitors, and neither were turned away, all of the individuals who plaintiff turned away were necessarily private customers unconnected to government. Accordingly, an injunctive order directed at the government would not affect the private pretenders. While plausible on its face, what this argument ignores is that Dr. Denney's suspicions were roused only upon the defendants' undercover visits and his discovery of the same. These visits were the but for cause of his self-censorship, and an injunction would clearly restore Dr. Denney's confidence in his relationships with his patients.

### b. Equitable Requirements

Next, defendants argue that the requirements of permanent injunctive relief have not been satisfied. "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, —— U.S. ——, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006).

Again, it appears that many of defendants' arguments were rejected, at least implicitly, by *Conant*. For example, defendants argue that emotional distress caused by an investigation is not irreparable harm, citing *Evenson v. Ortega*, 605 F.Supp. 1115, 1121 (D.Ariz.1985), but the harms of an investigation were sufficiently irreparable to justify the injunction upheld in *Conant*. Damages would be an inadequate remedy because they could not reassure Dr. Denney that similar investigative tactics will not be used in the future.

Furthermore, the balancing of hardships has already been undertaken, and the public interest taken into account, by the *Conant* court's upholding of the injunction.

## 4. Qualified Immunity

 Defendants also argue that they are entitled to qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In analyzing claims involving qualified immunity, courts engage in a two-part test. First, the court must determine if, in the light most favorable to party asserting injury, the official's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second, the court must determine whether that right was clearly established. *Id.* at 202, 121 S.Ct. 2151. If there were substantial grounds for the official to have concluded that he had legitimate justification under the law for acting as he did, the plaintiff is not entitled to damages.

 As set forth above, plaintiff has stated a claim for the violation of a constitutional right. Furthermore, and contrary to defendants' assertion, the court need not "extend" *Conant* to cover investigative acts; rather, the holding of *Conant* plainly encompassed investigative acts that were motivated by disagreement with a doctor's speech and beliefs. The distinction that defendants attempt to draw between an investigation prompted by DEA license revocation proceedings and a criminal investigation is immaterial. The holding of *Conant* (as opposed to a technical reading of its actual injunction) forbade investigations generally, not those limited to a particular setting. Accordingly, the defendants are not entitled to qualified immunity.

## B. Due Process

 Plaintiff alleges that defendants have violated his right to due process by depriving him of his right to free speech and his liberty interests in his reputation and medical practice. The Due Process Clause guarantees two types of due process: procedural and substantive. *See Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Procedural due process provides "a guarantee of fair procedure in connection with any deprivation of life, liberty, or property" by the government. *Id.* Substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Id.* (internal quotation marks omitted). Specifically, the substantive component of the Due Process Clause "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.' " *Squaw Valley Dev. Co. v. Goldberg,* 375 F.3d 936, 948 (9th Cir.2004) (quoting *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir.1998)) (quoting *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Here, plaintiff alleges that his substantive due process rights have been violated. "As a threshold matter, 'to establish a substantive due process claim a plaintiff must . . . show a government deprivation of life, liberty, or property.' " *Squaw Valley,* 375 F.3d at 948 (quoting *Nunez,* 147 F.3d at 871).

### 1. Plaintiff's Interest in Free Speech

 First, plaintiff alleges that defendants have violated his right to due process by chilling his free speech. However, an infringement of the right to free speech cannot provide the basis for a violation of due process. The Supreme Court

has held that "where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Rehnquist, C.J., for plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Since the First Amendment provides explicit protection for the right to free speech, which plaintiff claims has been chilled, plaintiff may not additionally base a due process claim on a violation of his right to free speech.

### 2. Plaintiff's Interest in his Reputation and Medical Practice

■■■ Second, plaintiff alleges that defendants' undercover investigation has injured his reputation and practice and, therefore, violated his right to due process. Reputation by itself is not a liberty interest protected by the Fifth Amendment. *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). The liberty guaranteed by the Fifth Amendment includes the right "to engage in any of the common occupations of life," *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), as well as "some generalized due process right to choose one's field of private employment," subject to reasonable government regulation. *Connecticut v. Gabbert*, 526 U.S. 286, 291–92, 119 S.Ct. 1292, 143 L.Ed.2d

399 (1999) (citing *Dent v. West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889) (upholding a requirement of licensing before a person can practice medicine); *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 60 L.Ed. 131 (1915) (invalidating on equal protection grounds a state law requiring companies to employ 80% United States citizens)).

■■■ Generally, however, the liberty interest to hold specific private employment has been afforded substantive due process protection only when the government completely prohibits, rather than briefly interrupts, a person from engaging in his chosen profession. *Gabbert*, 526 U.S. at 292, 119 S.Ct. 1292. Further, this right "is simply not infringed by the inevitable interruptions of our daily routine as a result of legal process which all of us may experience from time to time." *Id.* In *Gabbert*, the Supreme Court held that a lawyer's "Fourteenth Amendment right to practice one's calling is not violated by the execution of a search warrant, whether calculated to annoy or even to prevent consultation with a grand jury witness." *Id.* at 293, 119 S.Ct. 1292. Following *Gabbert*, the Ninth Circuit held in *Lowry v. Barnhart* that an "indirect and incidental burden on professional practice is far too removed from a complete prohibition to support a due process claim." *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (footnote omitted). In *Lowry*, a lawyer claimed that an administrative law judge was biased against him and the bias violated his constitutional due process right to practice his profession. *Id.* The Ninth Circuit reasoned that although the judge's "alleged interference with Lowry's practice does not share the brevity of the interference in *Gabbert*, . . . it is similar in severity in that both fall far short of a complete prohibition. Lowry doesn't claim that [the judge] barred him from

retaining clients or appearing at hearings. At worst, he may have a harder time finding clients because of his losing track record." *Id.*

In the case at bar, plaintiff alleges that defendants' undercover investigation has injured his practice. Specifically, the complaint alleges that plaintiff "has become suspicious of his patients, and has been forced to turn away patients he fears may be using false identification provided by law enforcement." Compl. ¶ 21. As in *Gabbert* and *Lowry,* this appears to fall short of a complete prohibition. Plaintiff has only alleged that he has had to turn away some patients, not that he has been completely precluded from the practice of medicine. Thus, it would appear that plaintiff has not identified a liberty interest protected by substantive due process. The court therefore dismisses plaintiff's due process claim.

## C. Equal Protection

Plaintiff asserts a Fifth Amendment Equal Protection claim based on chilling of his First Amendment right to free speech. "[While] the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (quoting *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); citing *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)). The court analyzes a Fifth Amendment equal protection claim in the same way it analyzes an equal protection claim under the Fourteenth Amendment. *Id.*

There are two steps in analyzing an equal protection claim. First, plaintiff "must show that the statute in question 'results in members of a certain group being treated differently from other persons based on membership in that group.'" *Sagana v. Tenorio,* 384 F.3d 731, 740 (9th Cir.2004) (citing *United States v. Lopez–Flores,* 63 F.3d 1468, 1472 (9th Cir. 1995)). Second, the court determines the appropriate level of scrutiny to apply and evaluates the legitimacy of the discriminatory government action under that standard. *Id.* "Laws alleged to violate the equal protection clause are generally subject to one of three levels of 'scrutiny' by courts: strict scrutiny, intermediate scrutiny, or rational basis review. Laws are subject to strict scrutiny when they discriminate against a suspect class, such as a racial group, or when they discriminate based on any classification but impact a fundamental right, such as the right to vote." *Tucson Woman's Clinic v. Eden,* 379 F.3d 531, 543 (9th Cir.2004) (citing *Grutter v. Bollinger,* 539 U.S. 306, 326, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003); *Reynolds v. Sims,* 377 U.S. 533, 562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)).

The First Amendment right to free speech is such a fundamental right. *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 101 & n. 8, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). In *Mosley,* the Supreme Court held that "[t]he Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Id.* at 101, 92 S.Ct. 2286 (citing *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *Dunn v. Blumstein,* 405 U.S. 330, 342–43, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972)). The court held that an ordinance prohibiting picketing on all but one subject was not narrowly tailored to prevent disruption. *Id.* The court then noted, "In a variety of contexts we have said that 'even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the

end can be more narrowly achieved.' This standard, of course, has been carefully applied when First Amendment interests are involved." *Id.* at 101 n. 8, 92 S.Ct. 2286 (citations omitted). Since the First Amendment right to free speech is a fundamental right, the court applies strict scrutiny to laws impacting First Amendment rights and discriminating based on any classification. See *Tucson Woman's Clinic,* 379 F.3d at 543. Government actions subject to strict scrutiny "will be sustained only if they are suitably tailored to serve a compelling state interest." *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

 In the case at bar, plaintiff alleges that defendants discriminated against him based on his support for medical marijuana and by conspiring to investigate him and infiltrate his medical practice. While doctors who recommend marijuana do not comprise a suspect class under equal protection, plaintiff also alleges that defendants have infringed his fundamental right to free speech. Since plaintiff has pled a claim that he has been discriminated against in a way that impacts a fundamental right, the court applies strict scrutiny to the challenged government action. Government actions subject to strict scrutiny "will be sustained only if they are suitably tailored to serve a compelling state interest." *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

 Defendants' stated purpose for "visiting plaintiff was to get written marijuana regulations acceptable to Dixon Herbs." Defs.' Mot. at 29. Plaintiff argues that defendants' method of obtaining a marijuana recommendation to gain access to Dixon Herbs was not narrowly tailored because there were readily available "alternative law enforcement techniques that could have been implemented by defendants." Pl.'s Opp'n at 34. As stated above, the alternative investigative techniques cited by plaintiff appear somewhat questionable. However, there is at least a reasonably founded hope that plaintiff may develop an evidentiary basis to support his claim that alternate methods could have been employed that would have had the same efficacy in achieving the investigation's stated purpose, and that would not have compromised the safety or welfare of those involved.

**D. § 1985(3)**

 Plaintiff alleges that defendants violated 42 U.S.C. § 1985(3) by conspiring to infiltrate his medical practice and thereby deprive him of due process and equal protection of the law. To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege that defendants acted from "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" in conspiring to deprive him of equal protection of the laws, or of equal privileges and immunities under the laws. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Ninth Circuit has "extended [section 1985(3)] beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." *Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985) (internal quotation marks omitted). There are only two ways to show such a governmental determination: "we require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Id.* (citation omitted).

Plaintiff alleges that defendants conspired to violate his rights and the conspiracy "was motivated [b]y a discriminatory animus against physicians who support the medical use of cannabis." Compl. ¶ 29. Additionally, plaintiff argues that the *Conant* injunction is a governmental determination that physicians who support the medical use of cannabis require and warrant special federal assistance in protecting their civil rights.

 The *Conant* injunction, however, does not fall in one of the categories the Ninth Circuit requires for a governmental determination. It is not a designation by the courts that the class is a suspect or quasi-suspect classification requiring more exacting scrutiny. Nor is it an indication from Congress through legislation that the class requires special protection. Without a governmental determination that physicians who support the medical use of marijuana warrant special federal assistance to protect their civil rights, plaintiff cannot make out an essential element of a § 1985(3) claim, that defendants acted from a class-based discriminatory animus. *See Schultz,* 759 F.2d at 718 (plaintiff failed to state a claim because there was no governmental determination that a "transitory coalition of state representatives" merited special protection); *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1538 (9th Cir.1992) (no governmental determination for "individuals who wish to petition the government"). The court dismisses plaintiff's section 1985(3) claim.

### E. § 1986

"Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 626 (9th Cir.1988) (citation omitted). As the parties note, "[a] claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." *Id.* Since plaintiff has failed to state a claim under section 1985(3), he has also failed to state a claim under section 1986. Plaintiff's section 1986 claim is dismissed.

### IV. Conclusion

The motion to dismiss and motion for summary judgment are DENIED with respect to the First Amendment and equal protection claims, and GRANTED with respect to the due process claim, the § 1985 claim, and the § 1986 claim. The application for a continuance under Rule 56(f) is GRANTED.

IT IS SO ORDERED.